

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-1065-07

---

**BETH SUZANNE LANDERS, Appellant**

**v.**

**THE STATE OF TEXAS**

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### LAMAR COUNTY

---

COCHRAN, J., delivered the opinion of the Court in which PRICE, WOMACK, JOHNSON, and KEASLER, JJ., joined. KELLER, P.J., filed a concurring opinion. MEYERS, J., filed a dissenting opinion in which HOLCOMB, J., joined. HERVEY, J., concurred.

### O P I N I O N

We granted appellant's petition for discretionary review to determine whether the elected district attorney was disqualified from prosecuting appellant for intoxication manslaughter because he had represented her in a prior DWI case. Appellant claims that her due-process rights were violated because the district attorney used "confidential information"

that he had obtained during his prior representation against her in this case.[1]  Although this is a close case and we are sensitive to the ethical issues involved, we agree with the court of appeals that there is "no evidence that the State's attorney used any confidential information" in appellant's prosecution on the current charge.[2]  Thus we affirm the judgment of the trial court and of the court of appeals, both of which had denied appellant's due-process claim.

I.

In late 2005, appellant was indicted for murder and intoxication manslaughter.  She filed a pretrial Motion to Disqualify State's Prosecutor, alleging that the district attorney had represented her "in a prior case involving similar facts and issues" in 2002.  During a pretrial hearing, appellant testified that Gary Young, the elected County and District Attorney of Lamar County, had represented her in a felony intoxication-assault charge that was reduced to DWI three years earlier.  She testified, "He was privileged to my criminal history" and background information.  Both on cross-examination of appellant and through Gary Young's testimony, it was established that appellant's criminal history was public record and was contained in the current intoxication-manslaughter offense report.  Concerning appellant's

---

[1] Appellant's Ground for Review asks:
Whether the court of appeals wrongly interpreted "confidential information" in deciding that the due-process clause was not violated where the appellant was prosecuted by her former attorney who represented her in a substantially similar prior case and extensively cross-examined her on the underlying facts from the prior case and on other criminal history and substance abuse related information that he first learned as defense counsel in the prior case.

[2] *Landers v. State*, 229 S.W.3d 532, 533 (Tex. App.–Texarkana 2007).

"background," Mr. Young testified, "We will introduce the judgment and sentence as it relates to those cases." The trial court denied appellant's motion.

Appellant pled guilty to the second-degree felony of intoxication manslaughter and true to a single felony enhancement paragraph.[3] At the jury trial on punishment, the State introduced a pen packet that showed appellant had prior felony convictions for delivery of a controlled substance, burglary, and robbery in 1994, as well as credit card abuse in 1995. She also had misdemeanor convictions for DWI in 2000, DWLS, public intoxication, and disorderly conduct in 2001, another DWI (second offense) in 2002, and theft by check in 2003.

Steve Burrows, a long-time friend of appellant, then testified that he and the fifty-year-old appellant were at his mother-in-law's home drinking beer and cognac on the night of October 8, 2005. Mr. Burrows fell asleep on the couch and when he woke up well after midnight, appellant was loud, abusive, and intoxicated. Around 7:00 a.m., Mr. Burrows decided to drive appellant to her mother's home, but, once they were in the car, she became violent, hitting Mr. Burrows and grabbing the steering wheel. She pulled the mirror off of the windshield and tried to hit him with it. It was hard to drive, so Mr. Burrows pulled into a parking lot, parked his truck, and walked around for about fifteen minutes. When he returned, appellant had calmed down, so he drove her to her parents' home and then returned to his own house. A little later, appellant returned to Mr. Burrows's house and yelled at him

---

[3] Although the indictment alleged an enhancement paragraph, that prior conviction was for delivery of a controlled substance in 1994. It was not the prior DWI from 2002.

before she drove off "pretty fast" down the street.

Harold Adams testified that he was stopped at the intersection of Collegiate and Clarksville Streets that morning when "a car came shooting up behind me extremely fast." The car almost hit him as it passed on the right going 75-85 m.p.h. Mr. Adams saw the car appear to run a red light and then turn left. As Mr. Adams followed, he heard sirens and saw that an accident had occurred.

Erin McDowell testified that she was on her way to church when a car passed her on the left going 85-95 m.p.h. Then she came upon the debris of an accident and saw a man lying in the road. She stopped her car. Appellant came up to her, grabbed her by the shoulders, very upset, and said, "Oh, my God," numerous times. Appellant appeared remorseful.

Officer Foreman went to the accident scene and found a car with a motorcycle wedged up in front of it. Harley Dale Nelson, the victim, was lying on the road several hundred feet behind the car and his motorcycle. His head was "dislocated" from his spine. Officer Foreman knew Mr. Nelson because they had both worked at the Campbell Soup facility for years.

Officer Whitacker arrived, blocked the traffic with his patrol car, and then talked to appellant. He could tell that she was intoxicated, but she was complaining about glass in her eye, so Officer Whitacker had an ambulance take her to the hospital. He followed and saw her acting very belligerently. "She was using profanities, screaming, yelling, hollering. She

would get kind of calm, and she would get out of control." He ordered a blood sample to be taken, and the test results showed that appellant had a .24 blood-alcohol level, as well as cocaine in her system. She refused all medical treatment, so Officer Whitacker drove her to the police department, although she was still acting "out of control."

William Hindman, appellant's former father-in-law, testified for the defense that appellant was "very cordial and very courteous" to him and his wife, who were raising her eleven-year-old son, Tanner. Mr. Hindman explained that he and his wife were raising Tanner because both appellant and her former husband were incarcerated at the time Tanner was born, and he just stayed with them from then on. According to Mr. Hindman, Tanner and Tanner's brother, Tyler, have a good relationship with appellant. Apellant has not contributed any money for Tanner's clothes, food, schooling, or medical care, but she has bought him things for Christmas. Although Mr. Hindman has seen appellant intoxicated on "several" occasions, he has never seen her intoxicated in front of Tanner.

Appellant's 80-year-old aunt testified that appellant "was a good sweet girl always to me, kind and sweet to me and all the members of our family." Ever since high school she has had a problem with alcohol, but "[s]he tried hard to overcome it."

Nelda Crawford, Appellant's mother, a retired school teacher, testified that appellant has a drug and alcohol problem. She did not approve of appellant's lifestyle, but she did and would still try to help her. She visits her every Sunday, and appellant has shown remorse. In 2002, appellant was involved in an accident involving alcohol in which she drove her car

through a woman's house.  She was injured very badly and had to stay in the hospital five weeks.  Nonetheless, she continued to drink and was on pain pills because of the injury to her eye and back from the accident.  Mrs. Crawford testified that on October 9th, appellant snuck into her home, got her car keys, stole her car, and killed a man with it.

Appellant took the stand and testified that she pled guilty to intoxication manslaughter because she wanted to take responsibility for her actions.  She admitted that she had been an alcoholic and drug abuser since she was fifteen.  She used heroin, heavy opiates, pain killers, cocaine, speed, and tranquillizers.  She explained that in the 1993 robbery incident she and her ex-husband were withdrawing from Dilaudids and taking Valium to alleviate the symptoms, and that made them do something really stupid:  They went into a drugstore and she gave the druggist a threatening note saying, "Give me your Dilaudid," while her husband held his finger in his jacket like he had a gun.  On direct examination, she explained that she lost her left eye in the 2002 DWI accident in which she hit a house.  Appellant knew that she did not have to testify, but she explained,

> I wanted an opportunity to tell the family how sorry I am.  I wake up every morning and I'm very sorry for what's happened and I wish I could take it back but I can't.  When Mrs. Nelson [the deceased's wife] was on the stand yesterday afternoon, she touched my heart.  I'm sorry, very sorry to have deprived you and your daughters and your granddaughters of a big part of your life, and I would do anything if I could to change it, but I can't.  I'm sorry.  That's why I wanted to testify.  I just wanted an opportunity to tell the family that I'm sorry.

She admitted that she was very intoxicated and had cocaine in her system at the time of the accident.  And she said that she was very argumentative because she "was under the

influence of sleeping medication, pain killers, extreme amounts of alcohol." Appellant admitted that when she gets out of jail, she continues drinking.

The jury sentenced appellant to ninety-nine years' imprisonment and a $10,000 fine. Appellant then filed an amended motion for new trial, alleging that "Gary Young utilized in this trial confidential information, both privileged and unprivileged client information, about the Defendant's previous drug and alcohol use, and her prior alcohol-related conviction." She claimed that the use of this information constituted a blatant conflict of interest and a due-process violation.

The trial judge held an evidentiary hearing on the issue. He ordered the district attorney to turn over his original client file from the 2002 DWI case to appellant's current attorney, and he reviewed the State's entire case file from this prosecution *in camera* to see if there was any information relevant to the conflict-of-interest issue in it. The trial judge asked appellant's attorney if he had found anything in Mr. Young's 2002 file that he could identify as being confidential information that would have been used against appellant, but counsel never pointed to any specific information in that file.

Before hearing testimony, the trial judge stated, "The thing that I want to hear is–we can speculate from now on about what might have been, but I think it's your obligation and your client's obligation to come forward and tell us what it is she thinks [Gary Young] used. It's not enough just to say he was my lawyer once upon a time. Most of what happened in that case was a matter of public record."

Appellant called Mr. Young to testify. He stated that he had represented appellant in the 2002 intoxication-assault case, and that he negotiated a plea bargain with the State to reduce the charge to DWI (second offender). Gary Young testified that his client file had been in storage and that he did not look at it before the intoxication-manslaughter trial. The file did contain Mr. Young's personal notes with some specific details about appellant's use of alcohol, cocaine, and marihuana as it related to the 2002 incident, but Mr. Young testified that all of this information could easily be found in the 2002 police offense report.

Mr. Young spent a total of four hours on the case and did not interview any witnesses. The two cases had a common thread: Both involved driving and intoxication by alcohol and cocaine. Mr. Young agreed that he learned in the 2002 case that appellant had been combative and abusive to her caregivers in that case, just as she was after the present accident. But Mr. Young testified that appellant did not tell him that she had been combative or abusive; that information was in the medical records that the State gave him. During his representation of appellant, she did not discuss anything about her children or tell him that her children's grandparents took care of them.

Appellant then testified and said that, in the 2002 case, she had told Mr. Young, "I had left my home that morning to go and get more drugs, and that I was under the influence from the night before of crack and marijuana and alcohol." She said that it came out in this trial that she was not able to take care of her children and that she had told Mr. Young back in 2002 that she lived with her parents and that they took care of her and one of her sons. She

told him about the prior robbery by threat:  "I told him what I would normally . . . tell

someone about that is that my ex-husband, my husband at the time, was the one who went

in and robbed the drugstore[.]  I was with him so by the law of parties in the State of Texas,

I was considered to be just as guilty as he was.  But in my mind, I didn't feel like I was

guilty."  She agreed that it is no secret that she has a drug and alcohol problem and that her

mother even testified to a thirty-year history of such abuse.

The trial court entered extensive findings of fact on the conflict-of-interest issue.[4]

---

[4] Appellant filed written objections to the trial court's findings of fact, stating that they were made in violation of TEX. R. APP. P. 21.8(b) which, at that time, provided, "In ruling on a motion for new trial, the court must not summarize, discuss, or comment on evidence."  That rule had been amended by the time appellant filed his objections.  It now reads, "In ruling on a motion for new trial, the court may make oral or written findings of fact."  TEX. R. APP. P. 21.8(b).  The rationale for the change in the rule is to ensure that appellate courts will not need to speculate as to the possible factual findings supporting a trial judge's ruling if the trial judge will articulate them.  *See State v. Cullen*, 195 S.W.3d 696, 698 (Tex. Crim. App. 2006) (noting that a trial court's refusal to enter findings of fact "leaves appellate courts with nothing to review except a one-word ruling and forces the courts of appeals to make assumptions about the trial court's ruling.  The ruling could be based on a mistake of law, on the trial court's disbelief of the testimony presented, or even on a clerical error.").  Although the amended rule was not yet effective at the time the trial judge entered these findings, they are, at worst, harmless because a reviewing court must defer to any plausible, implied factual findings that are supported by the record and that would uphold the trial court's ruling.  The trial judge's factual findings are supported by the record, and they include the following:
1. Mr. Young represented the Defendant in a prior criminal matter in 2002 that was ultimately pled to a misdemeanor DWI;
2. Mr. Young documented 4 hours of work on the 2002 DWI;
3. Mr. Young never spoke to the Defendant's family during the 2002 DWI representation;
4. The facts of the 2002 DWI are a matter of public record and public knowledge. The facts were detailed extensively in the Paris newspaper at the time;
5. Mr. Young did not cross-examine the Defendant about the details of her stay in the hospital from the 2002 DWI;
6. Mr. Young limited his cross-examination of the Defendant about the 2002 DWI to the most basic information that was generally known, in the Paris News, and that had been brought out in direct examination;

In his conclusions of law, the trial judge stated, *inter alia*, "No confidential information was used by Mr. Young in the prosecution of the Defendant in the above and titled case" and "No Due-process violation occurred."

On direct appeal, appellant claimed that the district attorney violated her due-process rights because he had represented her in a "substantially similar case" and "cross-examined her on the underlying facts from the prior case and on criminal history and substance abuse related information he learned as counsel in the prior case."[5] The court of appeals set out a lengthy description of the trial testimony and the testimony developed at both the hearing on the motion to disqualify and the hearing on the amended motion for new trial.[6] Based upon its thorough review of all the testimony, the court of appeals concluded: "We do not find

7.    Mr. Young limited his cross-examination of the Defendant about her criminal history to what was brought by the Defendant's witnesses, that was first mentioned by the Defendant on direct, and that was contained in offense reports from other jurisdictions;

8.    Mr. Young did not have access to any reports about the Robbery or any other prior crimes committed by the Defendant from his representation in the 2002 DWI.

The judge's findings went on to state that the Defendant testified on direct examination to the details of the prior robbery, her extensive drug and alcohol problem, and the details of the 2002 DWI incident.

The trial court's findings continued with the following:

16.    At no time was privileged information from the 2002 representation used against the Defendant;

17.    All of the information used to prepare for trial in this matter was a matter of public record or public knowledge or available to any prosecutor from law enforcement sources;

18.    The Defendant's testimony at the motion for new trial lacked credibility and was not believed by this court[.]

[5] Appellant's Brief in the Texarkana Court of Appeals, p. 8.

[6] *Landers*, 229 S.W.3d at 536-40.

support for Landers' claims in the reporter's record."[7]

The court of appeals noted that, although Mr. Young had asked her about the circumstances surrounding the 1993 robbery and whether she was blaming her entire criminal history on her substance abuse problems, "a state prosecutor would have been entitled to ask Landers about the specific circumstances of any of her prior criminal offenses, as well as how those crimes were committed and how they impacted the victims."[8]  The court of appeals further noted that appellant had herself testified about these matters–all of which were of public record–on direct examination.

The court of appeals distinguished its earlier decision in *In re Goodman*.[9]  In that case, the defendant could point to "unique and confidential information" that Mr. Young had gained during his former representation of Mr. Goodman that, if used in prosecuting his former client, would present a "genuine threat" to Goodman's due-process rights.[10]  But in the present case, each item that appellant claimed was the product of confidential information used by Mr. Young actually came from an entirely separate source–medical records that the State had already obtained in 2002, public criminal records that the State had obtained both

---

[7] *Id.* at 540.

[8] *Id.*

[9] 210 S.W.3d 805 (Tex. App.–Texarkana 2006, orig. proceeding), *rev'd sub nom. State ex rel. Young v. Sixth Judicial Dist.*, 236 S.W.3d 207 (Tex. Crim. App. 2007).  This case, like the present one, involved a situation in which Mr. Young prosecuted a former client.

[10] *Landers*, 229 S.W.3d at 540-41.

in 2002 and 2005, appellant's own testimony, and the testimony of her witnesses.[11] The court

of appeals held that "[b]ecause we find no evidence that the State's attorney used any

confidential information in the prosecution of Landers for this current charge, we affirm the

trial court's judgment."[12]

II.

## A.     The Standard of Review

The standard of review for disqualification of the prosecutor by the trial court is

whether the court abused its discretion.[13] The trial court abuses its discretion only when the

decision lies "outside the zone of reasonable disagreement."[14] In reviewing the historical

facts upon which the trial court's ruling on a motion to disqualify is based, an appellate court

"should afford almost total deference to a trial court's determination of the historical facts

that the record supports especially when the trial court's fact findings are based on an

---

[11] *Id.* at 541.

[12] *Id.* at 533.

[13] *See Henderson v. Floyd*, 891 S.W.2d 252, 253 (Tex. 1995) (per curiam) (standard of review for disqualification in civil cases); *Rio Hondo Implement Co. v. Euresti*, 903 S.W.2d 128, 132 (Tex. App.–Corpus Christi 1995, orig. proceeding) ("We review the trial court's finding that confidential information was or was not shared under an abuse of discretion standard."); *In re Cap Rock Elec. Coop.*, 35 S.W.3d 222, 231 (Tex. App.–Texarkana 2000, orig. proceeding); *see also State v. Tkacz*, 654 N.W.2d 37, 41 (Wis. Ct. App. 2002) (appellate court reviews trial court's decision of whether prosecutor's disqualification is required in a particular case as an exercise of discretion and "if record shows that discretion was in fact exercised and we can perceive a reasonable basis for the trial court's decision" reviewing court will uphold it).

[14] *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005).

evaluation of credibility and demeanor."[15] When the defendant contends that the lower court

erred in applying the law to the trial court's findings, the review is *de novo*.[16]

## B.    The Applicable Legal Principles

In Texas, the elected district or county attorney "shall represent the state in all criminal

cases in the district courts of his district and in appeals therefrom, except in cases where he

has been, before his election, employed adversely."[17] The office of a district attorney is

constitutionally created and protected; thus, the district attorney's authority "cannot be

abridged or taken away."[18] In *State ex rel. Hill v. Pirtle*, we held that "[a] trial court may not

disqualify a district attorney or his staff on the basis of a conflict of interest that does not rise

to the level of a due-process violation."[19]

If a prosecuting attorney has formerly represented the defendant in the "same"

---

[15] *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *see also State v. Baker*, 934 A.2d 820, 821 (Vt. 2007) ("'A motion to disqualify [prosecutor] is a matter that rests within the sound discretion of the trial court, and its ruling will not be disturbed absent an abuse of discretion.'") (quoting *Stowell v. Bennett*, 739 A.2d 1210, 1211 (Vt. 1999)); *Tkacz*, 654 N.W.2d at 44 ("We will uphold a trial court's findings of fact [in a hearing to disqualify a prosecutor] unless they are clearly erroneous").

[16] *See State v. Moff,* 154 S.W.3d 599, 601 (Tex. Crim. App. 2004) ("When the resolution of a question of law does not turn on an evaluation of the credibility and demeanor of a witness, then the trial court is not in a better position to make the determination, so appellate courts should conduct a *de novo* review of the issue."); *see also Baker*, 934 A.2d at 821.

[17] T EX. CODE CRIM. PROC. art. 2.01.

[18] *State ex rel. Eidson v. Edwards*, 793 S.W.2d 1, 4 (Tex. Crim. App. 1990) (internal quotation marks omitted).

[19] *State ex rel. Hill v. Pirtle*, 887 S.W.2d 921, 927 (Tex. Crim. App. 1994).

criminal matter as that currently being prosecuted, he is statutorily disqualified.[20] The

Legislature has decreed that this conflict of interest is both obvious and actual, and we have

so held.[21] Thus, for example, if a prosecutor has previously represented a defendant in a

burglary guilty-plea proceeding, he is statutorily disqualified from representing the State in

a later probation revocation of that same burglary case.[22] For a prosecuting attorney to

"switch sides" in the same criminal case is an actual conflict of interest and constitutes a due-

process violation, even without a specific showing of prejudice.[23] This has been called a

"hard and fast rule of disqualification."[24]

---

[20] TEX. CODE CRIM. PROC. art. 2.01.

[21] *Id*.; *see Ex parte Spain*, 589 S.W.2d 132, 134 (Tex. Crim. App. 1979). In *Spain*, we stated:

> When a district attorney prosecutes someone whom he previously represented in the same case, the conflict of interest is obvious and the integrity of the prosecutor's office suffers correspondingly. Moreover, there exists the very real danger that the district attorney would be prosecuting the defendant on the basis of facts acquired by him during the existence of his former professional relationship with the defendant. Use of such confidential knowledge would be a violation of the attorney-client relationship and would be clearly prejudicial to the defendant.

*Id.*

[22] *Id.*

[23] *Id.* ("when a prosecutor proceeds against a defendant whom he formerly represented as defense counsel in the same case, no specific prejudice need be shown by the defendant"; such a violation of article 2.01 constitutes a violation of due-process); *see also Ex parte Morgan*, 616 S.W.2d 625, 626 (Tex. Crim. App. 1981) (following *Spain*). Federal courts also find that "'due-process is violated when an attorney represents a client and then participates in the prosecution of that client with respect to the same matter.'" *United States v. LaVallee*, 439 F.3d 670, 681 (10th Cir. 2006) (quoting *United States v. Schell*, 775 F.2d 559, 566 (4th Cir. 1985)).

[24] Edward L. Wilkinson, *Conflicts of Interest in Texas Criminal Cases*, 54 BAYLOR L. REV. 171, 177 (2002); *see generally,* EDWARD L. WILKINSON, LEGAL ETHICS & TEXAS CRIMINAL LAW 118-42 (2006 ed.).

But in the context of a conflict-of-interest claim that does not involve prior representation in the *same* criminal matter, the rule is somewhat different. A district attorney is not automatically disqualified from prosecuting a person whom he had previously represented, even when it is for the same type of offense.[25] In that context, a due-process violation occurs only when the defendant can establish "actual prejudice," not just the threat of possible prejudice to his rights by virtue of the district attorney's prior representation.[26] Actual prejudice would occur, for example, if:

1.      The prosecuting attorney has previously personally represented the defendant in "a substantially related matter";[27] and

---

[25] *See Munguia v. State*, 603 S.W.2d 876, 878 (Tex. Crim. App. 1980) (county attorney who had represented defendant in prior rape charges was not disqualified from prosecuting him for current aggravated rape charges, noting that "while [defendant] had told him all the details of that prior offense as well as [defendant's] prior criminal record, there was absolutely no discussion of the facts of the instant case"); *Reed v. State*, 503 S.W.2d 775, 776 (Tex. Crim. App. 1974) (special prosecutor not disqualified although he had previously represented defendant and had knowledge of his prior criminal record, but he had obtained that knowledge by virtue of his former position as an assistant county attorney).

[26] *In re State ex rel. Young*, 236 S.W.3d 207, 212 n.23 (Tex. Crim. App. 2007). In *Young*, this Court noted,

> We have held in the context of a violation of another disciplinary rule, for example, that before he can demonstrate a violation of due-process, a defendant must establish "actual prejudice," not just the threat, however genuine (as the court of appeals fashioned its rule here), of prejudice. *See House v. State,* 947 S.W.2d 251, 253 (Tex. Crim. App. 1997) ("[I]f a defendant cannot show actual prejudice from an alleged disciplinary rule violation by the State, then he will not be entitled to relief . . . ."); *cf. Gonzalez v. State,* 117 S.W.3d 831, 837 (Tex. Crim. App. 2003) ("Allegations of one or more violations of the disciplinary rules or evidence showing only a possible future violation are not sufficient" to justify attorney disqualification).

*Id.*

[27] *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09(a)(3), *reprinted in* TEX. GOV'T CODE, tit. 2, subtitle G app. A.

2.      The prosecuting attorney obtained "confidential" information by virtue of that prior representation which was used to the defendant's disadvantage.[28]

This rule is like that adopted by the Supreme Court of North Carolina in *State v. Camacho*:[29]

> We hold that a prosecutor may not be disqualified from prosecuting a criminal action in this State unless and until the trial court determines that an actual conflict of interests exists. In this context, an "actual conflict of interests" is demonstrated where a District Attorney or a member of his or her staff has previously represented the defendant with regard to the charges to be prosecuted and, as a result of that former attorney-client relationship, the prosecution has obtained confidential information which may be used to the defendant's detriment at trial.[30]

Although the North Carolina Supreme Court defined an "actual conflict of interest" in a slightly different way–requiring that the former representation concerned the same charges as the current prosecution–the purport is the same: the defendant must show an actual, not theoretical, conflict of interest based on the likely use of confidential communications.

---

[28] *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05, *reprinted in* TEX. GOV'T CODE, tit. 2, subtitle G app. A.

[29] 406 S.E.2d 868 (N.C. 1991).

[30] *Id*. at 875. Some jurisdictions have held that a prosecutor should be disqualified when "the controversy involved in the pending case is substantially related to a matter in which the lawyer previously represented another client." *State v. Tippecanoe County Court*, 432 N.E.2d 1377, 1378 (Ind. 1982) (attorney who had twice represented defendant in criminal matters was properly disqualified from prosecuting him when the two earlier convictions were alleged for enhancement purposes); *State v. Hursey*, 861 P.2d 615, 618 (Ariz. 1993) (following *Tippecanoe* and noting that prosecutor had "gained intimate knowledge of defendant while representing him."). Those jurisdictions, however, do not require that the defendant show a due-process violation before disqualification is required.

The disqualification rule is somewhat different in civil cases in which private attorneys may be disqualified merely upon a showing that the attorney had previously represented the adverse party in "a substantially related matter."[31]  This disqualification is based largely upon "the guidance" given by Rule 1.09(a)(3) of the Texas Disciplinary Rules of Professional Conduct which states, "Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client . . . if it is the same or a substantially related matter."[32] But, as we recently noted, "there is no requirement in the civil context that the failure to disqualify counsel must rise to the level of a due-process violation[.]"[33]  And with civil law firms, there is no constitutional or statutory authority mandating that a particular attorney represent a particular client as is true for the district attorney, who shall represent the State in all criminal matters in his jurisdiction "except in cases where he has been, before his election, employed adversely."[34]  Further, in a prior plurality opinion, we have held that a

---

[31] *See In re EPIC Holdings*, 985 S.W.2d 41 (Tex. 1998) (holding that trial court had clearly abused its discretion in declining to disqualify a civil law firm that had represented the defendant in a matter whose claims were "substantially related" to those in the pending lawsuit).

[32] TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09(a), *reprinted in* TEX. GOV'T CODE, tit. 2, subtitle G app. A; *see In re EPIC Holdings*, 985 S.W.2d at 48 ("We have repeatedly observed that 'the Texas Disciplinary Rules of Professional Conduct do not determine whether counsel is disqualified in litigation, but they do provide guidelines and suggest the relevant considerations'") (citation omitted).

[33] *In re State ex rel. Young*, 236 S.W.3d at 213.

[34] TEX. CODE CRIM. PROC. art. 2.01; TEX. CONST. art. V, § 21. *See State v. Camacho*, 406 S.E.2d 868, 874 (N.C. 1991) (citing cases that have noted that "[t]here is, of course, quite a difference in the relationship between law partners and associates in private law firms and

trial court "is without legal authority" to disqualify an elected district attorney solely on the basis of a violation of the Texas Disciplinary Rules of Professional Conduct.[35]

1.    **"Substantially related" matters.**  The Texas Supreme Court has held that "two matters are 'substantially related' within the meaning of Rule 1.09 when a genuine threat exists that a lawyer may divulge in one matter confidential information obtained in the other because the facts and issues involved in both are so similar."[36]  In the context of criminal matters, a prosecutor cannot be disqualified from prosecuting a former client if the criminal trials are not closely or substantially related.[37]

---

lawyers representing their government," and stating that "in states such as ours, District Attorneys are elected officials whose duty to prosecute is expressly mandated by constitutional provisions. Court orders requiring them to withdraw absent an actual conflict of interests unnecessarily interfere with their performance of that constitutionally mandated duty.  Such orders unnecessarily disrupt the system established by our Constitution.").

[35] *Eidson v. Edwards*, 793 S.W.2d 1, 6-7 (Tex. Crim. App. 1990); *see also In re State ex rel. Young*, 236 S.W.3d at 213 (noting same).  Of course, this does not mean that a prosecutor need not comply with the Texas Disciplinary Rules of Professional Conduct or that he ought not exercise appropriate discretion to avoid any appearance of impropriety.  *See, e.g., United States v. Bolton*, 905 F.2d 319, 322 (10th Cir. 1990) (rejecting defendant's due-process claim when prosecutor had formerly represented him on an unrelated charge, but stating, "We agree with the district court that there was an appearance of impropriety.  We cannot fathom the obdurate persistence of the prosecution in keeping [the prosecutor] on this case.  The decision, in the face of objection and the trial court's apt criticism is, to say the least, aberrant.  The exercise of a modicum of prudence on the part of the prosecutor would have made consideration of this issue on appeal completely unnecessary.").  The issue before us, however, is one of legal disqualification of a duly elected public official, not impropriety.  Violations of disciplinary rules may be dealt with by other means–both by the State Bar and at the ballot box.

[36] *In re EPIC Holdings*, 985 S.W.2d at 51.

[37] *See, e.g., Havens v. Indiana*, 793 F.2d 143, 144-45 (7th Cir. 1986) (attorney who had formerly represented defendant in possession-of-burglary-tools case was not disqualified from prosecuting him for attempted burglary; finding that the two cases were not "substantially related," the information that the prosecutor used to cross-examine the defendant "was not

Prosecution for the same type of offense does not, by itself, make the two proceedings substantially related.[38]   The question is whether the same or inextricably related facts, circumstances or legal questions are at issue in both proceedings, not whether both charges are for the same criminal offense,[39] or both offenses involve guns, drugs, or other specific

_____

confidential information because it was a matter of public record," and defendant "failed to prove that by reason of the former confidential relationship" between him and his former attorney, that attorney "acquired special knowledge of the facts that were used against" defendant in current trial); *United States v. Bolton*, 905 F.2d 319, 321-22 (10th Cir. 1990) (rejecting defendant's claim that prosecutor should have been disqualified from prosecuting him as a felon in possession of a firearm because he had previously represented him in prior case for armed robbery; concluding that "there was no factual relationship between the two actions in which [prosecutor] participated.  [Prosecutor] represented [defendant] on an armed robbery charge a number of years earlier and testified to the court that he was aware of no confidential information relating to the instant case."); *DeShields v. Snyder*, 830 F. Supp. 816, 818 (D. Del. 1993) (defendant failed to prove due-process violation when prosecutor in capital-murder appeal–who had also consulted with trial prosecutors during trial–had previously represented him in escape conviction, evidence of which was offered during punishment phase of capital trial; defendant failed to show that prosecutor used any confidential information against former client; "All the information adduced at the penalty phase hearing was available in public records."); *see also Corn v. State*, 659 N.E.2d 554, 556 (Ind. 1995); *People v. Vanderpool*, 217 A.D.2d 716, 718 (N.Y. App. Div. 1995); *see generally* Allan L. Schwartz and Danny R. Veilleux, Annotation, *Disqualification of Prosecuting Attorney in State Criminal Case on Account of Relationship with Accused*, 42 A.L.R.5th 581, §§ 3[b] and 4[b] (2001).

[38] *People v. Trail*, 555 N.E.2d 68, 74 (Ill. App. Ct. 1990) (prosecutor who had formerly represented defendant on a charge of attempted sexual assault and delivery of alcohol to minors was not disqualified from prosecuting him for sexual assault of his stepdaughters because the specific facts in each case were entirely different even though the offenses were similar).

[39] *Id.*; *see also United States v. Wheeler*, 56 M.J. 919, 925 (A. Ct. Crim. App. 2002) ("We compare the facts, circumstances, and legal issues of the past and present representations to determine whether they are related in some substantial way.  If the prior representation is inextricably linked to the current case, including use of confidential information, then the trial counsel is disqualified.").

facts.[40]  "The substantial relationship test is not a formalistic inquiry into degrees of closeness, but is in large measure a judgment as to whether the former client's confidences are at risk of being turned against him."[41]

**2.       The use of "confidential communications."** The second prong, "confidential communications," includes both privileged and unprivileged client information which the prosecutor learned by virtue of the former attorney-client relationship, but it excludes information that is generally known.[42]  This exclusion of "generally known" information makes sense.  If the client information is a matter of public record or is already generally

---

[40] *Compare Freund v. Butterworth*, 165 F.3d 839, 864 (11th Cir. 1999) (addressing possible conflict-of-interest by defense law firm, and noting that, although diazepam and guns were involved in both the former and present prosecutions, "[s]uch vague similarities . . . do not establish a substantial relationship between a prior and subsequent representation."), *with United States v. Martinez,* 630 F.2d 361, 362 (5th Cir.1980) (substantial relatedness existed because prior representation by defense attorney of adverse witness concerned the "same [criminal] transactions" and "same events" that were at issue in defendant's case).

[41]  GEOFFEREY C. HAZARD & W. WILLIAM HODES, THE LAW OF LAWYERING § 13.5, at 13-13 (Supp. 2005).

[42] *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05, *reprinted in* TEX. GOV'T CODE, tit. 2, subtitle G app. A.  Rule 1.05(a) states:
> Confidential information includes both privileged information and unprivileged client information.  Privileged information refers to the information of a client protected by the lawyer-client privilege of Rule 5.03 of the Texas Rules of Evidence or of Rule 5.03 of the Texas Rules of Criminal Evidence or by the principles of attorney-client privilege governed by Rule 5.01 of the Federal Rules of Evidence for United States Courts and Magistrates.  Unprivileged client information means all information relating to a client or furnished by the client, other than privileged information, acquired by the lawyer during the course of or by reason of the representation of the client.

However, comment 8 to Rule 1.05 notes that an attorney can, consistent with the rules, use information that he may have learned about during his former representation if "the information is generally known."

known to other people, then the expectation of harm resulting from the prosecutor's subsequent use of the information is small.[43]   As a policy matter, it is inappropriate to disqualify an elected public official because he obtained publicly available information from a client rather than from other public sources.  And it elevates form over substance to permit a former client to restrict a prosecutor's duty to represent the State if he is privy only to information from his former client that is "generally known."[44]  Furthermore, "a prosecutor is obliged to see . . . that any sentence imposed is based on all unprivileged information known to the prosecutor."[45]

With that general background, we turn to the present case.

### III.

Appellant argues in this Court that the court of appeals misinterpreted the term "confidential information" in holding that her due-process rights were not violated by Mr. Young's prosecuting her in this intoxication manslaughter punishment trial when he had

---

[43] *See Metro Life Ins. Co. v. Syntek Fin. Corp.*, 881 S.W.2d 319, 321 (Tex. 1994) (concluding that attorney's representation in divorce case and later adverse representation in commercial dispute were not "substantially related" when complained-of information was available in the public domain and had been provided during discovery).

[44] *See, e.g., State ex rel. Youngblood v. Sanders*, 575 S.E.2d 864, 869-71 (W. Va. 2002) (trial court abused its discretion in disqualifying defense attorney on basis of conflict of interest when attorney's paralegal had interviewed co-defendant's wife about possible representation; any factual information contained in paralegal's memorandum file was "generally known" because it was contained in multiple statements given to police; noting that if co-defendant's wife had "provided distinct factual information that had not been disclosed to the police previously, then arguably the issue of a potential conflict" would be raised).

[45] TEX. DISCIPLINARY R. PROF'L CONDUCT 3.09, comment 1, *reprinted in* TEX. GOV'T CODE, tit. 2, subtitle G app. A.

represented her in a prior DWI plea proceeding. She claims that "[t]he State gained an illicit and tremendous advantage because the prosecutor's personal knowledge of confidential information allowed him to paint the Appellant in cross-examination in as poor a light as possible."[46]

She argues that, because Mr. Young first learned of the details contained within the 2002 DWI police offense report and in her medical records (contained in the State's file of the 2002 DWI proceeding) during his prior representation, that information was "confidential." Thus, she asserts that the court of appeals misapplied the law in stating that

> the record also shows that Young's awareness of Landers' alcohol and cocaine use (as factors contributing to the 2002 accident) were already known by the police, as those items were specifically mentioned in the official report. Any substitute prosecutor for the current case could easily obtain a copy of the 2002 police report and learn of Landers' prior alcohol and substance abuse problems. As such, Young's knowledge is neither unique nor confidential.[47]

Appellant apparently assumes that if the client is the first person to tell an attorney about a certain fact, it is *necessarily* "confidential information," even though the same facts might be broadcast on television, radio, the newspaper headlines, or a police offense report. This

---

[46] Appellant's Brief at 8.

[47] *Landers*, 229 S.W.3d at 538. Appellant also complains of the following passages in the court of appeals's opinion:
> Young received copies of Landers' medical records as part of the State's discovery disclosures. Young also knew about Landers' possible use of both alcohol and cocaine–a thread that was common to both the 2002 charge and the charge now on appeal. Young, however, explained that this information was public knowledge, as it had been reported in the local newspaper and had been referenced in the police department's original offense report for the 2002 charge.

*Id*.

is simply not true. "Confidential information" is, by definition, information that is available *only* to authorized persons; it is "classified," "privileged," "private," "secret," "restricted."[48] Rule 503(a)(5) of the Texas Rules of Evidence defines a "confidential communication":

> A communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.[49]

If the information conveyed to the attorney is also made known to others or is discovered by a third person through independent means, it is not confidential.[50]

In the present case, it was certainly no secret that appellant had a drug and alcohol problem: Her former father-in-law testified to that fact, as did her aunt, her mother, and she herself. She told the jury that she had been an alcoholic and a drug abuser since she was fifteen. The fact that she may have also revealed that same history to Mr. Young in 2002 did not convert it into a confidential communication.[51]

---

[48] "Confidential." ROGET'S II: THE NEW THESAURUS (3rd ed. 1995).

[49] TEX. R. EVID. 503(a)(5).

[50] *See, e.g., Johnson v. State*, 174 S.W. 1047, 1048 (1915) (it was not error to allow a third party to testify about statements made by appellant to his attorney during a visit to the murder scene because the statements were unprivileged remarks made to all persons at the scene); *Hodges, Grant & Kaufmann v. IRS*, 768 F.2d 719, 721 (5th Cir. 1985) ("Because the privilege protects only confidential communications, the presence of a third person while such communications are made or the disclosure of an otherwise privileged communication to a third person eliminates the intent for confidentiality on which the privilege rests.").

[51] *See* note 42 *supra*.

Appellant's medical records and the offense report detailing her 2002 DWI accident and injury were also given to Mr. Young by the State in 2002. The fact that appellant might have told Mr. Young about the same information that was given to him by the prosecutor in 2002 did not convert that public information into a confidential communication.[52]

Neither at trial nor on appeal has appellant pointed to any information that Mr. Young learned or might have learned during his 2002 representation that was not already in the public domain and testified to by appellant's own witnesses. The trial court explicitly found that, "At no time was privileged information from the 2002 representation used against Defendant" and "All of the information used to prepare for trial in this matter was a matter of public record or public knowledge or available to any prosecutor from law enforcement sources." The record supports these factual findings.[53]

Appellant's real complaint is that it simply was not fair that the district attorney, who had represented her in the past, should be allowed to cross-examine her about either that prior

---

[52] *Id.*

[53] *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *see also State v. Medina*, 713 N.W.2d 172, 183 (Wis. Ct. App. 2006) (setting out trial court's factual findings that prosecutor did not remember any conversation with defendant during prior representation and did not refer to any information at sentencing from the prior representation that was not a matter of public record; concluding that defendant had failed to show that prosecutor who had previously represented defendant in misdemeanor theft case had a "competing loyalty that adversely affected [defendant's] interests" in current burglary case); *State v. Tkacz*, 654 N.W.2d 37, 43-44 (Wis. Ct. App. 2002) (setting out trial court's factual findings in hearing to disqualify prosecutor and stating that it had no reason to disturb them; concluding that trial court's legal conclusion that no conflict of interest existed was correct).

offense[54] or her background.  Indeed, discretion being the better part of valor, an experienced district attorney might well err on the side of caution and voluntarily disqualify himself from representing the State in the criminal prosecution of a former client, but neither trial nor appellate courts can patrol the outskirts of the possible appearance of impropriety by a duly elected district attorney.[55]  A district attorney may be disqualified only for a violation of the defendant's due-process rights, not for violations of the disciplinary rules of professional conduct alone.[56]

Because appellant failed to show that her due-process rights were violated, we affirm the judgment of the court of appeals.

---

[54] Appellant complains that Mr. Young's testimony that he did not intend to use anything that appellant told him in 2002, and that he would "introduce the judgments and sentences as they relate to those cases and that's it" at the pretrial hearing was "blatantly false."  But that is exactly what the State did in its case-in-chief.  It was only when appellant's witnesses and she herself testified to her prior drug problems and the details of her prior robbery and prior DWI offense, that the district attorney cross-examined her about that sworn testimony, not about any "confidential information" from the prior representation.

[55] *See, e.g., State v. Baker*, 934 A.2d 820, 822 (Vt. 2007) (recognizing that "the appearance of impropriety alone is simply too slender a reed on which to rest a disqualification order except in the rarest of cases").

[56] *State ex rel. Young v. Sixth Judicial Dist.*, 236 S.W.3d 207, 212 n.23 (Tex. Crim. App. 2007).  In *House v. State*, 947 S.W.2d 251, 253 (Tex. Crim. App. 1997), we stated,
> The [disciplinary] rules do not grant a defendant standing or some "systemic" right to complain about an opposing party's alleged disciplinary rule violations that do not result in "actual prejudice" to the defendant.

*Id.*  The disciplinary rules cannot be turned into a tactical weapon to disqualify opposing counsel unless the defendant can show that the alleged rule violations deprived him of a fair trial or otherwise affected his substantial rights. *Id.*

Delivered: June 18, 2008

Publish