

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00265-CR

IN RE THE STATE OF TEXAS, RELATOR

OPINION ON ORIGINAL PROCEEDING FOR WRIT OF MANDAMUS

December 20, 2018

## CONCURRING OPINION ON REHEARING

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Before us is a motion for rehearing in this cause. I vote to grant it. I also concur in the decision to conditionally issue mandamus directing the Honorable Pat Phelan, of the 286th Judicial District, to vacate his July 2, 2018 and August 15, 2018 orders granting the motions to disqualify Christopher Dennis and the 286th District Attorney's Office from prosecuting cause nos. 14-12-8123, 16-02-8667, 16-09-8879, 16-09-8894, 17-06-9051, 17-06-9074, 17-06-9081, 17-07-9112, 17-07-9113, 17-07-9122, 17-09-9133, 17-11-9197, and 17-11-9211. My reasons for so concluding follow.

When can a trial court disqualify a district attorney? That is the issue here. The State argues that the authority is limited to situations involving prior representation by the prosecutor. No doubt, precedent has held that a district attorney may be disqualified for

engaging in a conflict of interest. The conflicts alluded to normally encompass those arising when the prosecutor previously represented the accused in the same matter. *See Landers v. State*, 256 S.W.3d 295, 304 (Tex. Crim. App. 2008). Prior representation of the accused in a different matter may also be a conflict of interest warranting disqualification if the circumstance denies the accused due process. *Id.* at 304–05.

But, the Court of Criminal Appeals left open the likelihood of disqualification in at least one other scenario. It too implicates a conflict of interest, one not founded upon prior representation but, rather, personal bias or grudge. *See Ex parte Reposa*, AP-75,965, 2009 Tex. Crim. App. Unpub. LEXIS 725, at *32–33 (Tex. Crim. App. Oct. 28, 2009) (not designated for publication).[1] Admittedly, claims of this ilk do not merit automatic disqualification. *Id.* at *32. Quite the contrary, the party seeking disqualification must show that the conflict, i.e., personal bias or grudge, prejudiced the accused "in such a manner as to rise to the level of a due process violation." *Id.*

Prosecutors are like everyone else. They too have their biases and need not be entirely neutral and detached. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 248–49, 100 S. Ct. 1610, 64 L. Ed. 2d 182 (1980); *see Buntion*, 482 S.W.3d at 77 (Tex. Crim. App. 2016) (observing that a prosecutor need not be a neutral party in criminal litigation). They may also be quite zealous in their advocacy. *See Buntion*, 482 S.W.3d at 77; *Ex parte Reposa*, 2009 Tex. Crim. App. Unpub. LEXIS 725, at *33. Nevertheless, they are public officials

---

[1] I am aware of the directive that unpublished opinions of the Court of Criminal Appeals should not be cited as precedent. TEX. R. APP. P. 77.3. I am also aware of the fact that the Court of Criminal Appeals has cited its own unpublished opinions in their own subsequent published opinions. *See Buntion v. State* 482 S.W.3d 58, 77 (Tex. Crim. App. 2016) (citing *Ex parte Reposa,* 2009 Tex. Crim. App. Unpub. LEXIS 725, at *36). Because that Court cites its own unpublished opinions, there is little reason why I should ignore such valued writing. Indeed, it would be unfair to suggest that unpublished opinions should not be used as authority since they represent a special outcome in a special case. Irrespective of the case, an appellate court is bound to abide by the law irrespective of whether its decision is published or unpublished, and I have no reason to think that the Court of Criminal Appeals failed to do that in *Ex parte Reposa*.

bound to serve the public interest, *Marshall*, 446 U.S. at 249–50, not their own. While they are free to exercise much discretion, that discretion does not insulate them from judicial scrutiny when their decisions are motivated by improper factors. *Id.* So, the Due Process Clause of the 14th Amendment of the United States Constitution does impose limits. *Id.*; *Ex parte Reposa,* 2009 Tex. Crim. App. Unpub. LEXIS 725, at *33. Interjecting "a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions." *Marshall*, 446 U.S. at 249–50. As observed in *Ex parte Reposa,* the United States Supreme Court in *Marshall* "left open the possibility that 'different considerations might be held to apply if the alleged biasing influence contributed to prosecutions **against particular persons, rather than to a general zealousness in the enforcement process**.'" *Ex parte Reposa*, 2009 Tex. Crim. App. Unpub. LEXIS 725, at *33 (emphasis added). The step from acceptable zeal to prohibited bias comes when the prosecutor has "an axe to grind against the defendant, as distinguished from the appropriate interest that members of society have in bringing a defendant to justice." *See id.* at *36. The record at bar contains evidence upon which the trial court could have found that pivotal "axe to grind."

The trial court disqualified the prosecutor, Christopher Dennis and the 286th District Attorney's office, from prosecuting the actions wherein Christina Woods Duffy represented the accused upon finding that Dennis had a conflict of interest that rose to the level of a due process violation. The conflict was personal and found its genesis, according to the trial court, when Duffy successfully urged a motion to exclude a State's expert witness on behalf of one of her clients. That led the district attorney to text Duffy

3

via cell phone that "any pending cases *you* have with offers outstanding . . . those offers are revoked, expired, and null. Effective immediately." (Emphasis added). The prosecutor followed this announcement with at least two other writings wherein he again told Duffy that "there would be no offer at this time." When asked by the trial court whether he was retaliating against Duffy because she succeeded in having an expert excluded, the district attorney described his decision "as a strategy." He also told the trial court that what he did "as a matter of strategy, *as a reaction to something that another counsel does*, is well within, not just my right as prosecutor, but is within my responsibility as prosecutor." (Emphasis added). He continued as follows:

> If I have 20 lawyers opposing me, and 19 of them behave in a certain fashion, and we get along in a certain way, and things go swimmingly, shall we say, and I treat them one way; but, one acts differently and things go differently, and things work differently, it is not prosecutorial [vindictiveness] for me to change my strategy in dealing with the one.

Based on Duffy successfully urging a motion to exclude on behalf of her client, the prosecutor thought a change of strategy was needed. So, he "appraised what happened in that hearing, and . . . decided that the best thing for *my office* to do at that moment was to halt proceedings in those cases," "those cases" being "every case that [he] had with [Duffy]." (Emphasis added).

The district attorney also informed the trial court that he had used this strategy with two other defense attorneys. Subsequent evidence obtained via affidavit and hearings led the trial court to conclude that Dennis's utterance about using the strategy before was a "misrepresentation." So too did it deem the prosecutor's action to be a violation of the constitutional right to equal protection enjoyed by both Duffy and her clients, which violation arose from Duffy "exercising protected legal rights of" her clients.

4

This is not a plea bargain case or one purporting to recognize a right to a plea bargain.[2] A defendant has no right to demand that the State offer him such an agreement. *Thompson v. State*, 691 S.W.2d 627, 635–36 (Tex. Crim. App. 1984) (en banc); *accord Hallmark v. State*, 541 S.W.3d 167, 181 (Tex. Crim. App. 2017) (observing that the State "is not required to enter into plea bargain agreements"). Moreover, a prosecutor generally has the authority to withdraw a plea offer at any time before both the defendant accepts and the trial court approves of it. *Becerra v. State*, No. 07-17-00169-CR, 2018 Tex. App. LEXIS 8696, at *3–4 (Tex. App.—Amarillo Oct. 24, 2018, pet. filed) (mem. op., not designated for publication).

Nor is this a case wherein effort is made to control the prosecutor's abundant discretion in choosing how to perform his duties. He is elected by the people and charged with the task of enforcing our criminal laws.

Rather, the case at hand concerns whether a prosecutor may remain prosecutor in cases wherein he denied the defendants certain privileges merely because their attorney zealously and successfully represents them. The adverse implications to a defendant's Sixth Amendment right to counsel posed by such a scenario cannot be denied. *See* U.S. CONST. amend. VI (stating "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence"). That amendment, as made applicable to all states via the Due Process Clause of the Fourteenth Amendment, *see Gideon v. Wainwright,* 372 U.S. 335, 341–45, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963), accords a defendant the right to reasonably effective assistance

---

[2] The prosecutor represented that he had outstanding plea offers when he decided to revoke them.

of counsel. *See Strickland v. Washington*, 466 U.S. 668, 685–86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

The prosecutor's policy of withholding plea offers to those represented by Duffy left Duffy with little choice. She could 1) withdraw with the hope that Dennis then would deign to treat her ex-clients in the same manner he treated defendants in general, 2) remain counsel with the understanding that the district attorney intended to treat her clients differently because she represented them, or 3) remain counsel and opt to give her clients a level of representation deemed acceptable to the prosecutor.

As the district attorney said, "If I have 20 lawyers opposing me, and 19 of them behave in a certain fashion, and we get along in a certain way, and things go swimmingly . . . and I treat them one way; but, one acts differently and things go differently, and things work differently." This comment suggests a general mode of practice focused not necessarily on justice and the purportedly criminal acts of the accused and their impact on the victims and society. Rather, it connotes a focus on the identities of defense counsel, the manner in which defense counsel chose to fulfill their duties to their clients, and their relationships with the prosecutor. If the prosecutor finds the relationships acceptable, their clients receive one measure of treatment, such as a plea offer. If the prosecutor dislikes the relationships with other counsel, their clients receive different treatment, such as no plea offer. This runs contrary to the prosecutor's obligation to do justice. *See* TEX. CODE CRIM. PROC. ANN. art. 2.01 (West 2005) (stating, among other things, that "[i]t shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict, but to see that justice is done").

6

Indeed, implicit in the presumption that prosecutors undertake a criminal prosecution in good faith and in a non-discriminatory fashion, *see Gawlik v. State,* 608 S.W.2d 671, 673 (Tex. Crim. App. [Panel Op.] 1980) (noting the presumption that prosecutors undertake their duty in a good faith and a non-discriminatory fashion), is the obligation to act in good faith and in a non-discriminatory fashion. Conduct dictated by impermissible considerations, such as race, religion, or a desire to interfere with the accused's constitutional rights, evinces prohibited discrimination and bad faith. *Malouff v. State*, No. 03-13-00723-CR, 2015 Tex. App. LEXIS 10338, at *7–8 (Tex. App.—Austin Oct. 7, 2015, no pet.) (mem. op., not designated for publication). And, while it may be that a prosecutor has great discretion in deciding to whom to offer a plea bargain, I found no authority permitting that discretion to be exercised based upon defense counsel's desire to effectively represent his or her clients as mandated by the United States Constitution. Nor did the State cite me to any such authority.

Nor did the State cite me to authority insinuating that the extension of plea bargains may lawfully be founded upon whether the prosecutor deems personally acceptable an opposing counsel's successful advocacy of a legal position on behalf of her client. Again, the dispute between the district attorney and Duffy arose from the latter's winning effort to exclude the testimony of a State's expert witness. He simply found her successful advocacy for her client's interests unpalatable. So, an obviously intentional decision was made to strike at her through all her clients by withdrawing all plea offers previously extended to them. This evinces a mode of discriminatory prosecution dictated by personal grudge. It illustrates nothing short of retaliation based upon the defendant obtaining a favorable legal ruling, and authority certainly tells us that due process forbids

the State from retaliating for a defendant's exercise of a constitutional right, such as the right to reasonably effective counsel. *See Neal v. State,* 150 S.W.3d 169, 173 (Tex. Crim. App. 2004) (stating that "a decision to prosecute violates due process when criminal charges are brought in retaliation for the defendant's exercise of his legal rights").

The evidence before the trial court illustrated that the district attorney had "an axe to grind" against Duffy and those defendants who turned to her to further their Sixth Amendment constitutional rights. He ground that axe in a retaliatory way which transgressed due process, in my opinion. The circumstances remind me of a tenet learned years ago and involving this State's concept of employment at will: an employer can generally terminate an employee with reason or for no reason, but he cannot do so for impermissible reason. The district attorney was free to extend and withdraw plea bargains at his discretion, but he must be prohibited from doing so for impermissible reasons. So, the trial court correctly determined that the district attorney at bar operated under a conflict of interest implicating due process when it came to withdrawing plea offers from Duffy's clients.

Yet, I am left concerned by the evidence, or lack thereof, indicating prejudice. *Ex parte Reposa* and its predecessors link due process and prejudice together. As the *Ex parte Reposa* court said, the party seeking to disqualify the prosecutor "must demonstrate that an actual conflict of interest existed **which prejudiced** [the applicant] in such a manner as to rise to the level of a due-process violation." *Ex parte Reposa*, 2009 Tex. Crim. App. Unpub. LEXIS 725, at *32. Maybe the court is saying that, without prejudice, there is no due process violation. Maybe it is saying that the due process violation (e.g., prosecutorial retaliation for exercising constitutional rights) must be prejudicial. Yet,

8

under either interpretation, the existence of prejudice is necessary. If the defendant is not prejudiced by the circumstances, then the prosecutor cannot be disqualified.

Here, evidence illustrates that the district attorney withdrew outstanding plea offers to all of Duffy's clients. And, though there exists evidence that there may have been more than one offer outstanding at the time, the record fails to show to whom they were extended or how many defendants were extended an offer. Nor does it show that the defendant being prosecuted in the case that instigated the row between Dennis and Duffy had been offered a plea bargain. To that I add evidence illustrating the prosecutor quickly changed the tone of his prior text message about plea offers. He did that through a letter sent on the same day wherein he told Duffy that offers would not be forthcoming "at this time." So too did he later extend an offer to at least one of her clients. Whether there were more, we do not know. Whether that offer was extended to a defendant who had previously been extended an offer, we do not know. Nevertheless, evidence filling those gaps was undoubtedly available to Duffy since the offer or offers were undoubtedly extended to her clients through her, and it was her burden, as representative of her clients, to proffer it.

Simply put, the evidentiary scenario brings to mind the adage "actions speak louder than words." Dennis intended to retaliate when initially texting Duffy about withdrawing plea offers. Nonetheless, his actions illustrate backpedaling from that intent. He apparently opened the door to plea negotiations and even extended an offer to a client of Duffy. This uncontradicted evidence leads me to conclude that the prejudice needed to allow disqualification presents itself as a possibility as opposed to an actuality. So, to

9

the extent precedent requires evidence of actual prejudice, I cannot say Duffy satisfied the burden.

Consequently, I concur with Justice Pirtle to the extent he concluded there existed a conflict of interest.[3]  I concur with Justice Parker to the extent she concluded the evidence of actual prejudice was deficient.  Thus, I would reverse the trial court's order disqualifying Christopher Dennis from prosecuting the proceedings listed in the opening paragraph of this opinion.  Yet, I do so with the caveat that anger and impulse runs among us all; to control them is not easy but necessary to effectively serve the elected office.


Brian Quinn
Chief Justice


Publish.

---

[3] Regarding Justice Pirtle's reference to "Schrodinger's Cat," one can find an explanation of the principle at 2:55 into the YouTube video located on the internet at https://youtu.be/3DjfZpwdN-o.  Sheldon's monologue on the subject is insightful.  Truly, just as one may not know if the box hides a living or dead cat until the box is open (assuming of course it is not shaken first), one cannot know if he has encountered harm until that harm is experienced.  Nonetheless, our jurisprudence seems to have little use for Schrodinger or his cat given that prejudice and harm are elemental to many legal concepts.  For instance, without prejudice, counsel's ineffectiveness is irrelevant.  *See Prine v. State*, 537 S.W.3d 113, 116 (Tex. Crim. App. 2017) (requiring evidence of prejudice).  Without prejudice, most errors do not result in reversal. *See* TEX. R. APP. P. 44.2 (requiring harm as a prerequisite to reversal).  As Sheldon concludes, "it is only by opening the box, you'll find out which it is"; only by waiting to the end to assess the act's affect do we generally discover if corrective action is needed.  Working in the past tense may not be the most effective or efficient way to work, but our body of law tends to require as much from us.  And, that leaves me to question whether we should normally wait until the end to correct the wrong.  Sadly, the answer comes not from me but from minds higher up the judicial ladder.