

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0891-15

**ARTHUR FRANKLIN MILLER, JR., Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### COLLIN COUNTY

KEEL, J., filed a dissenting opinion in which RICHARDSON and WALKER, JJ., joined.

### DISSENTING OPINION

Appellant claims that his attorney's bad advice about probation eligibility caused him to waive his right to a jury trial. The plurality's analysis of this claim errs in three ways. First, instead of recognizing that the jury waiver itself is prejudice, the plurality speculatively compares the result of the bench trial Appellant had with the reasonably likely result of the jury trial that he did not have. Second, the plurality misapplies the

different-outcome test that it purports to embrace by requiring not merely a reasonable likelihood of a better outcome, but a specifically better outcome from the hypothetical jury, i.e., probation. Third, the plurality indulges implicit fact findings to support the trial court's denial of the motion for new trial even though the trial court made explicit fact findings. I dissent.

## Evaluating Prejudice

Meritorious claims of ineffective assistance of counsel meet a two-part test: deficient performance and prejudice. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Strickland v. Washington*, 466 U.S. 668, 694 (1984). With certain exceptions not applicable here, proof of prejudice is required because the prosecution and the trial court are unable to prevent an attorney's deficient performance, *Strickland*, 466 U.S. at 693, and judicial proceedings enjoy a presumption of reliability. *Smith v. Robbins*, 528 U.S. 259, 286 (2000).

The prejudice inquiry must focus "on the fundamental fairness of the proceeding whose result is being challenged." *Strickland*, 466 U.S. at 696. For example, if the deficient performance is the failure to present mitigating evidence in a punishment hearing, the prejudice inquiry looks to the result of the punishment hearing. *See, e.g., Strickland*, 466 U.S. at 699-700 (prejudice from allegedly deficient performance in failing to present evidence at punishment hearing was analyzed in terms of its effect on the punishment hearing).

But if an attorney's deficient performance causes the waiver of a judicial proceeding to which the defendant has a right, that is ineffective assistance of counsel. *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000) (waiver of appeal); *Hill*, 474 U.S. at 59 (waiver of jury). The defendant does not have to show a likelihood of victory on appeal, acquittal or lower punishment; the waiver is the prejudice. *Flores-Ortega*, 528 U.S. at 484; *Hill*, 474 at 59. That's because a judicial proceeding that never happened enjoys no presumption of reliability. "Put simply, we cannot accord any 'presumption of reliability' to judicial proceedings that never took place." *Flores-Ortega*, 528 U.S. at 483 (citation omitted) (citing *Robbins*, 528 U.S. at 286).

*Hill* involved allegedly bad advice about parole eligibility given in the course of plea negotiations. *Hill*, 474 U.S. at 56. The appropriate prejudice inquiry was whether there was a reasonable likelihood that the defendant would not have plead guilty but for his attorney's bad advice. *Id*. at 59. The different-outcome question was relevant only to the extent that it impacted the decision to plead guilty.

> For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.

*Hill*, 474 U.S. at 59. The different-outcome question was not a stand-alone issue.[1] *See id.*

---

[1] The plurality quotes the same passage from *Hill* at greater length, slip op. at 12-13, and claims that with this passage, "*Hill* signaled that a court may properly consider whether the outcome of the proceeding would not have been different." Slip op. at 13. But the only point of that passage from *Hill* was that an evaluation of the likely outcome of the forfeited trial might

In *Flores-Ortega*, the Supreme Court considered whether the defendant's attorney failed to properly advise him about his right to appeal. *Flores-Ortega*, 528 U.S. at 478. The appropriate prejudice inquiry was whether the appeal waiver was an informed decision. *Id*. at 484. Echoing *Hill*, the Supreme Court held that the possible merits of the forfeited appeal "may give weight to the contention that the defendant would have appealed," but the failure to raise those points "will not foreclose the possibility that he could satisfy the prejudice requirement where there are other substantial reasons to believe that he would have appealed." *Flores-Ortega*, 528 U.S. at 486 (citing *Rodriquez v. U.S.*, 395 U.S. 327, 330 (1969)).

In *Lafler v. Cooper*, 566 U.S. 156 (2012), the deficient performance was the attorney's erroneous advice to reject a plea offer on grounds that the defendant could not be convicted at trial. *Id.* at 163. The prejudice inquiry focused on whether the "loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." *Id*. at 168. It did not matter that the defendant had a fair trial. "[T]he question is not the fairness or reliability of the trial but the fairness and regularity of the processes that preceded it, which caused the defendant to lose benefits he would have received in the ordinary course but for counsel's ineffective assistance." *Id*. at 169.

The plurality offers unpersuasive reasons for evaluating prejudice in terms of the

sometimes shed light on whether the deficient performance really did cause the waiver. *Hill*, 474 U.S. at 59.

trial's outcome instead of Appellant's decision to waive a jury. For example, the plurality suggests that *Strickland* applies to trials, and *Hill* applies to guilty pleas. Slip op. at 11. But *Strickland* and *Hill* were both guilty pleas. *Strickland*, 466 U.S. at 671; *Hill*, 474 U.S. at 54. The plurality asserts that, because Appellant had a bench trial, we "can discern whether the probable outcome of the proceedings would have been different with a jury trial that did not occur as compared to the bench trial that did occur." Slip op. at 13-14. This misses *Strickland*'s point that "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding <u>whose result is being challenged.</u>" *Strickland*, 466 U.S. at 696 (emphasis added). In this case, as in *Hill*, the jury waiver is the proceeding whose result is challenged.

### *Recer* vs. *Riley*

As the plurality points out, we have issued conflicting opinions about evaluating prejudice where the deficient performance was bad advice about probation eligibility. The plurality rejects *Recer* in favor of *Riley*. I think that is a mistake.

The attorney in *State v. Recer*, 815 S.W.2d 730 (Tex. Crim. App. 1991), erroneously advised his client that she was eligible for probation from the court, and she waived her right to elect the jury for punishment. *Id*. at 731. In accord with *Hill*, though without citing it, we required the defendant to prove, among other things, that she would have elected the jury for punishment but for her attorney's error. *Recer*, 815 S.W.2d at 731-32. We did not require a likelihood of a different outcome from a jury. *Id.* But *Riley*

*v. State*, 378 S.W.3d 453 (Tex. Crim. App. 2012), nevertheless cited *Recer* as authority to also require proof that "the results of the proceeding would have been different had [the defendant's] attorney correctly informed him of the law." *Riley*, 378 S.W.3d at 458 (citing *Recer*, 815 S.W.2d at 731-32). *Riley* imposed that additional requirement without any supporting authority or rationale, so the plurality errs in relying on it.

Furthermore, this Court has held that if an attorney's deficient performance causes structural error, like the waiver of a jury, the *Hill* analysis applies. *Johnson v. State*, 169 S.W.3d 223, 231 (Tex. Crim. App. 2005). Thus, it applies to this case.

### The Plurality's Flawed Prejudice Analysis

Even if *Riley* supports the application of a different-outcome test comparing the bench trial verdict with the hypothetical jury verdict, the plurality incorrectly applies it by requiring a reasonable likelihood of probation. Slip op. at 16. Even *Riley* did not go that far. *Riley*, 378 S.W.3d at 460.

In support of this more exacting burden, the plurality relies on *Ex parte Cash*, 178 S.W.3d 816 (Tex. Crim. App. 2005). *Cash* claimed that *Strickland*'s "central issue of prejudice" was "whether there is a reasonable probability that applicant's sentencing jury would have recommended probation had the issue been submitted to it[,]" and cited *Woodford v. Visciotti*, 537 U.S. 19, 22-23 (2002), for that proposition. But *Strickland* and *Woodford* were death penalty cases and did not mention probation. Plus, *Cash* is

distinguishable because the defendant there had a jury trial and jury punishment.[2] *Cash*, 178 S.W.3d 816.

Even if the plurality is correct, and Appellant's prejudice burden is to show a reasonable likelihood that his hypothetical jury would have awarded him probation, its evaluation of the record does not support its conclusion that there is no such likelihood.

For one thing, the plurality waves off the likelihood of prejudice by referencing objectionable evidence that the defense attorney either failed to challenge or elicited himself. Slip op. at 18 (noting that the complainant's testimony was "supported by the testimony of police investigators."). Sgt. Bill Lanier, the only police investigator to testify in the guilt phase of trial,[3] testified about extraneous matters that should have been excluded on grounds of irrelevance, prejudice, hearsay and/or lack of confrontation.[4]

---

[2] The plurality mischaracterizes *Cash* as "analogous" because Cash "claimed that his counsel's error had prevented the jury from considering probation." Slip op. at 16. That was not Cash's claim. The trial court in *Cash* refused to instruct the jury on probation, but the court of appeals did not review the merits of that ruling because Cash's attorney had filed an unsworn motion for probation. *Cash*, 178 S.W.3d at 817. On habeas, the defendant claimed ineffective assistance of counsel because the unsworn motion for probation prevented *appellate review* of the trial court's refusal to submit probation to the jury. *Id.* at 817-18. This Court denied relief given the jury's punishment verdict of 40 years imprisonment. *Id.* at 818.

[3] In the punishment phase, the only law enforcement officer to testify was the district attorney's investigator, whom the defense called to prove Appellant's lack of criminal history.

[4] For example, defense counsel did not object to Lanier's testimony that:

-Lanier left the investigation pending for two years in order to wait for "additional witnesses and victims to come forward."

-The defendant's son, Arthur Miller, III, in prison for molesting the complaining witness, corroborated the complainant's statements given in her forensic interview.

Competent defense counsel would have objected to a jury's consideration of such evidence, so the plurality should not consider it in its prejudice evaluation.

The plurality also ignores the challenges that a probation-qualified jury presents the prosecution. Such juries are relatively reluctant to convict, especially in cases that lack corroboration, as this one did, and they are susceptible to the downward pressure that the possibility of probation exerts on punishment deliberations. Considering Appellant's advanced age, 78 years at the time of trial, and his lack of criminal history, one could argue that there is a reasonable likelihood that a jury would have assessed a lower punishment than did the trial court.

Ultimately, however, such arguments highlight a fundamental weakness in the plurality's approach to prejudice in this case: It is impossible to say what a jury that was never seated likely would have done in a jury trial that was never had. Even *Cash* would not countenance that. *See Cash*, 178 S.W.3d at 818 (a finding that Cash's jury likely

-------

-The second complainant's mother was "adamant" that there were other victims.

-Lanier reached out to additional victims multiple times.

On cross examination, defense counsel implicitly conceded his client's guilt with the predicate to one question ("In your report you give some details of your investigation some of which are the year and approximate date when these assaults first began.") and elicited more testimony about extraneous offenses:

-Some extraneous victims contacted Lanier and some "would not come forward."

-"Multiple" other victims were reported to Lanier by two sources.

-The statute of limitations had expired for the case of one victim who did come forward.

would have recommended probation "would be based on pure conjecture and speculation.").

The correct prejudice inquiry in this case is whether Appellant waived his jury because of his attorney's bad advice, so I turn now to the jury waiver.

### The Jury Waiver

One justification for requiring proof of prejudice to support IAC claims is that "[t]he government is not responsible for, and hence not able to prevent, attorney errors that will result in reversal of a conviction or sentence." *Strickland*, 466 U.S. at 693. Another justification is the presumption of reliability that attends judicial proceedings. *Robbins*, 528 U.S. at 286. Neither of those justifications applies to this jury waiver.

Jury waivers must be made in writing and in open court with the approval of the trial court and the prosecution. TEX. CODE CRIM. PROC. art. 1.13. This gives the State the opportunity and the judge the responsibility to ensure that the waiver is made intelligently, that is, without any misunderstanding about, for example, who can consider probation in the event of a conviction. Defense counsel's deficient performance could have been prevented or cured by the trial judge or the prosecutor when the jury waiver was executed. But instead of clarifying the punishment ramifications of the jury waiver, they confused the issue.[5]

---

[5] It became clear in the punishment phase that the prosecution did not know the trial court could not consider probation. Unfortunately, such confusion on the part of the State is not unique to this case. *See, e.g., Ex parte Moussazadeh*, 361 S.W.3d 684, 688 (Tex. Crim. App. 2012) (prosecutor, trial judge and defense attorney misunderstood parole eligibility in murder

The record of the colloquy leading to the jury waiver memorializes the following: After the judge called the case, he advised Appellant of the charges against him and their ranges of punishment. Then, relying on the prosecutor's representation about the offense date, the judge told the defendant that he "would not be eligible for probation." Moments later, the prosecutor corrected the offense date and said, "so he's eligible for parole – I mean probation." The judge noted, "You heard all of that" and told Appellant that "a jury could give you probation." After Appellant turned down the State's plea offer, the judge introduced the idea of a court trial, but neither he nor anyone else mentioned probation again.

Applying the correct prejudice standard in cases like this one would encourage trial courts and the State to educate themselves about the defendant's probation eligibility and apply that knowledge to ensuring that defendants make informed punishment elections and jury waivers. The plurality's approach, however, encourages ongoing confusion about these crucial decisions.

## Findings on Motion for New Trial Ruling

Our rules used to prohibit trial judges from summarizing or commenting on the evidence in hearings on motions for new trial. Effective January 1, 2007, however, Tex. R. App. P. 21.8 was amended to allow trial courts to make findings when ruling on

case); *Burch v. State*, No. 09-14-00361-CR, 2016 Tex. App. LEXIS 9218 at *14 (Tex. App. – Beaumont Aug. 24, 2016, *pet. granted*) (mem. op., not designated for publication) (defense attorney, prosecution and trial court mistakenly believed defendant was eligible for probation from the jury).

motions for new trial. The reason for the change was so "that appellate courts will not need to speculate as to the possible factual findings supporting a trial judge's ruling if the trial judge will articulate them." *Landers v. State*, 256 S.W.3d 295, 301 n. 4 (Tex. Crim. App. 2008). Under the new rule, "[i]n the absence of express findings . . . we presume that the trial court made all findings, express and implied, in favor of the prevailing party." *Okwonko v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013) (citing *Riley*, 378 S.W.3d at 459) (emphasis added).

In this case, the trial judge explicitly found that the prosecutors and the defense attorney believed that Appellant was eligible for probation from the trial court and that the defense attorney told him so. The judge made no findings about the impact of the bad advice on Appellant's jury waiver, and he concluded that counsel's representation was not "so deficient to be a miscarriage of justice." However, the record from the hearing on the motion for new trial indicates that both the State and the defense argued the incorrect standard to the trial court.[6] As a result, the judge's decision and findings were based on the incorrect standard. The plurality and the court of appeals compound this error by using the trial judge's explicit findings to indulge implicit fact findings. Slip op. at 17; *Miller v. State*, No. 05-14-01065-CR, 2015 Tex. App. LEXIS 5520, at *12-13 (Tex. App.

---

[6] The State said, "The defense has to show that the results of the proceeding would have been different should the mistake not have been made. In this case, I don't think it would have been different. And there's no evidence before you that the result would have been different." The defense argued that "there is a reasonable probability or likelihood of some other outcome" and submitted to the court a copy of *Riley*.

— Dallas June 1, 2015, pet. granted) (mem. op., not designated for publication).

I would remand this case to the court of appeals with instructions to abate the appeal and order findings from the trial court that apply the proper standard and answer the only pertinent question in this case: whether Appellant waived his right to a jury because of his attorney's bad advice about probation eligibility. *See Davis v. State*, 278 S.W.3d 346, 350 (Tex. Crim. App. 2009) (evaluating ineffective assistance claim following abatement by lower court for findings by the trial court). I would further order the court of appeals, once it received the trial court's response, to evaluate the prejudice prong of Appellant's ineffective assistance claim in accord with this opinion, that is, in terms of the effect of the attorney's bad advice on Appellant's jury waiver. Since the plurality does not do so, I dissent.

Filed: April 26, 2017

Publish