**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-13-00242-CR**

_____

**IN RE BRETT W. LIGON**

**Original Proceeding**

**OPINION**

The Montgomery County District Attorney, Brett W. Ligon, seeks mandamus relief from orders in misdemeanor prosecutions recognizing his disqualification and appointing a prosecutor pro tem. He is the complaining witness named in the charging instruments.

The trial court could reasonably conclude under the circumstances that the orders were required by due process of law. Because relator has not established a clear and indisputable right to the relief sought, we decline to issue a writ of mandamus compelling the trial court to vacate the orders.

THE CASES

Real parties in interest Joseph Michael Leners and Robert Tyler Anderson

1

were arrested on warrants and charged by complaint and information with trespass. *See* Tex. Penal Code Ann. § 30.05(a) (West Supp. 2012); *see* Tex. R. App. P. 52.2. Leners was also charged by complaint and information with burglary of a vehicle.[1] *See* Tex. Penal Code Ann. § 30.04(a) (West 2011). The entry on the property and the breaking in or entry in the vehicle are alleged by the State to be without the effective consent of the owner, Brett W. Ligon.

Leners and Anderson filed motions to disqualify the District Attorney due to his dual status in the cases. They supplemented the motions to specify that a failure to disqualify the District Attorney and his staff would violate due process. They asserted that the District Attorney is personally interested in the cases as a private citizen. The trial court signed orders granting the motions to disqualify and appointing a special prosecutor.

A trial court may appoint an attorney to represent the State "[w]henever an attorney for the state is disqualified to act[.]" Tex. Code Crim. Proc. Ann. art. 2.07(a) (West 2005). Relator contends the trial court may exercise this authority only when a district attorney voluntarily recuses himself. *See* Tex. Code Crim. Proc. Ann. art. 2.07(b-1) (West 2005); *see also* Tex. Code Crim. Proc. Ann. art.

---

[1]Anderson was indicted for burglary of a vehicle as a repeat offender. *See* Tex. Pen. Code Ann. § 30.04(d)(2) (West 2011). That case is not at issue in this mandamus proceeding.

2

2.08 (West Supp. 2012). Relator has not recused.

Relator does not distinguish recusal from disqualification. He asserts "[r]ecusal or disqualification is within the sole discretion of the elected district or county attorney, although the consequences of the exercise of that discretion are subject to review on appeal." He contends a defendant's only remedy for a due process violation is to seek reversal on appeal of the conviction.

## A WRIT OF MANDAMUS

Relator argues he has no adequate remedy by appeal. *See State ex rel. Eidson v. Edwards*, 793 S.W.2d 1 (Tex. Crim. App. 1990) (plurality opinion). He argues that a writ of mandamus is his appropriate remedy. *See* Tex. R. App. P. 52. The real parties in interest argue the trial court's decision was a judicial one concerning a matter on which the law is unclear, and a writ of mandamus is not appropriate in these circumstances. *See Bowen v. Carnes*, 343 S.W.3d 805, 810 & n.6 (Tex. Crim. App. 2011) (Relief may be granted when only one rational decision could be made under unequivocal, well-settled, clearly controlling principles.).

The Court of Criminal Appeals has explained that, to be entitled to a writ of mandamus from an appellate court, "the State must demonstrate that: (1) there is no other adequate legal remedy, and (2) there is a clear and indisputable right to

3

the relief sought." *State v. Patrick*, 86 S.W.3d 592, 594 (Tex. Crim. App. 2002). When a trial court's ruling is a rational one supported by the law, and so does not represent a clear abuse of discretion, a writ of mandamus will not issue to compel a different ruling. *See State ex rel. Rosenthal v. Poe*, 98 S.W.3d 194, 198 n.3 (Tex. Crim. App. 2003). But a trial court has no discretion to rule on a matter when the court lacks authority to rule, or to decide a matter contrary to the law established by statute, rule, or a superior court. *See id.*

If the trial court clearly abused its discretion in ordering disqualification, a writ of mandamus will issue to require the trial court to vacate the order, assuming there is no other adequate legal remedy. *See Patrick*, 86 S.W.3d at 594. The real parties in interest do not dispute the relator's contention that he has no remedy by appeal. They contest only whether relator has shown a clear and indisputable right to mandamus relief.

"The standard of review for disqualification of the prosecutor by the trial court is whether the court abused its discretion." *Landers v. State*, 256 S.W.3d 295, 303 (Tex. Crim. App. 2008). In ruling on the disqualification issue, "[t]he trial court abuses its discretion only when the decision lies 'outside the zone of reasonable disagreement.'" *Id.* The trial court's application of law is reviewed *de novo*. *Id*. This is an original proceeding not an appeal, but we consider a

4

disqualification order for which there is no adequate remedy by appeal, and so we apply the appellate review standard in determining whether relator has shown a clear and indisputable right to a writ of mandamus.

DISQUALIFICATION

As applied to prosecutors in Texas, disqualification and recusal are not interchangeable words. *See In re Guerra*, 235 S.W.3d 392, 410 (Tex. App.—Corpus Christi 2007, orig. proceeding [mand. denied]). Legal disqualification refers to the ineligibility to act as the prosecutor in a particular case. *See Coleman v. State*, 246 S.W.3d 76, 81 (Tex. Crim. App. 2008) ("There are, however, a few instances in which the district attorney is legally disqualified from acting.)" Recusal refers to the voluntary removal of oneself as a prosecutor because of a conflict of interest or for other good cause. *See* Tex. Code Crim. Proc. Ann. art. 2.07(b-1); *Coleman*, 246 S.W.3d at 81. The trial court cannot require a prosecutor's recusal. *Coleman*, 246 S.W.3d at 81.

Instances of legal disqualification are few. *Id.* The constitutional authority of a district attorney cannot be abridged or taken away. *See Eidson*, 793 S.W.2d at 4. Yet the State may not deprive a defendant of his liberty without due process of law. U.S. Const. amend. XIV. The trial court has the constitutional authority to decide questions of law in the case. *See* Tex. Const. art. II, § 1, art. V, § 1; Tex.

5

Gov't Code Ann. § 21.001(b) (West 2004); *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239-40 (Tex. Crim. App. 1990); *Lytle v. Halff*, 75 Tex. 128, 12 S.W. 610 (1889). Consequently, "[a] district attorney may be disqualified only for a violation of the defendant's due-process rights[.]" *Landers*, 256 S.W.3d at 310.

Legal disqualification may arise when the prosecuting attorney has dual roles in a criminal matter. *See In re Guerra*, 235 S.W.3d at 415-16 (A district attorney cannot assist a grand jury's criminal investigation of himself.). When *Guerra* was decided, article 2.08 had not yet been amended to provide that a trial court may appoint an attorney pro tem to assist a grand jury in a criminal investigation of the district attorney. *See* Act of May 27, 1965, 59th Leg., R.S., ch. 722, § 2.08, 1965 Tex. Gen. Laws 317, 326 (amended by Act of May 27, 2011, 82nd Leg., R.S., ch. 977, § 2.08, 2011 Tex. Gen. Laws 2436, 2437 (West Supp. 2011)) (current version at Tex. Code Crim. Proc. Ann. art. 2.08(b) (West Supp. 2012)). The court in *Guerra* held nevertheless that article 2.07 authorized the trial court to appoint a prosecutor pro tem to investigate the elected district attorney. 235 S.W.3d at 414-15; *see* Tex. Code Crim. Proc. Ann. art. 2.07 ("[w]henever an attorney for the state is disqualified to act in any case or proceeding, . . . the judge of the court in which he represents the state may appoint any competent attorney to perform the duties of the office during the absence or disqualification of the

6

attorney for the state.").

Additionally, in *Guerra* the court found the trial court's appointment of a prosecutor pro tem "was implicitly authorized by a court's inherent power." *In re Guerra*, 235 S.W.3d at 415. By denying the district attorney the opportunity to participate in the grand jury's investigation into his own conduct, the appointment served to preserve the integrity of the court and aid in the administration of justice. *Id.*

In a separate issue in *Guerra*, the relator also challenged the particular prosecutor appointed, noting one of the allegations against relator involved election fraud, and the prosecutor pro tem was relator's opponent in the election. *Id.* at 428-29. The court decided under the circumstances of that case that the prosecutor pro tem was disqualified due to a conflict of interest that rose to the level of a due process violation. *Id.* at 431. The appellate court reasoned that a due process violation occurs where the prosecutor's personal interest generates a structural conflict that presents a potential for misconduct deemed intolerable. *Id.* at 430. The court also noted that under the circumstances the prosecutor pro tem "could be a material fact witness," and that if he testified "the confusion that would most likely result" from the "muliple roles as prosecutor, witness, and interested party would substantially affect the jury's verdict." *Id.* at 432.

7

The Court of Criminal Appeals cited *Guerra* and article 2.08 as "instances in which the district attorney is legally disqualified from acting." *Coleman*, 246 S.W.3d at 81 & n.12 (citing *In re Guerra*, 235 S.W.3d at 420-24). The Court distinguished recusal from legal disqualification. *See id.* at 81. The recusal procedure "allows the district attorney to avoid conflicts of interest and even the appearance of impropriety by deciding not to participate in certain cases." *Id.* "The responsibility for making the decision to recuse himself is on the district attorney himself; the trial court cannot require his recusal." *Id.* But if a prosecutor is legally disqualified from prosecuting a case -- if he is ineligible to act -- the trial court is not powerless to protect the due process rights of the defendant. *See id.*; *Landers*, 256 S.W.3d at 305, 310.

The briefs of the relator and the real parties in interest include citations to *Eidson* and *State ex rel. Hill v. Pirtle* to support the parties' respective positions. *See State ex rel. Hill v. Pirtle*, 887 S.W.2d 921, 932 (Tex. Crim. App. 1994) (plurality opinion); *Eidson*, 793 S.W.2d at 1; *see also generally State v. Hardy*, 963 S.W.2d 516, 519 (Tex. Crim. App. 1997) (discussing a plurality opinion's persuasive-versus-binding precedential effect). In *Eidson*, the trial court signed an order which "disqualified" the district attorney and his staff from a particular prosecution because an assistant district attorney had previously served in the case

as counsel for the defendant. 793 S.W.2d at 3. In granting mandamus relief, the Court of Criminal Appeals noted that the office of district attorney being "constitutionally created and therefore constitutionally protected" cannot be abridged, and that the responsibility of recusal lies with the district attorney. *Id.* at 4, 6; *see also* Tex. Const. art. V, § 21.

In *Pirtle*, the Court of Criminal Appeals held that the trial court lacked authority to remove assistant attorneys general who were assisting the elected district attorney in a prosecution. 887 S.W.2d at 932. "[N]either an elected prosecuting attorney, nor his assistants, can be disqualified or prevented by a trial court from carrying out their duties to prosecute criminal cases." *Id.* The Court noted that "[i]n the instant case, the real parties in interest have not claimed their rights to due process were violated[.]" *Id.* at 927. And a concurring judge explained that "it is clear from the text of this opinion that the plurality judges do not mean [the trial court] would really have been without lawful authority to bar the AGs from serving as prosecutors had the evidence shown a conflict of interest rising to the level of a due process violation[.]" *Id.* at 933 (Meyers, J., concurring); *but see In re State ex. rel. Anderson*, 396 S.W.3d 653, 655 (Tex. App.—Houston 14th Dist.] 2013, orig. proceeding) ("[T]he trial court had no authority to order the disqualification of the Harris County District Attorney's office[.]").

In *Coleman*, the Court noted that *Eidson* had "discuss[ed] the distinction between legal disqualification and voluntary recusal[.]" *See Coleman*, 246 S.W.3d at 81 n.14. And both *Pirtle* and *Eidson* describe the constitutional limitation on the holdings in those cases: the prosecutorial power granted to prosecuting attorneys is constrained by due process of law. *See Pirtle*, 887 S.W.2d at 927-28 ("A trial court may not disqualify a district attorney or his staff on the basis of a conflict of interest that does not rise to the level of a due process violation."); *Eidson*, 793 S.W.2d at 6 ("We do not wish to imply that a defendant would be left without recourse if the prosecution's failure to recuse itself violated his due process rights."); *see also* U.S. Const. amend. XIV.

Few cases in any jurisdiction present situations where the prosecuting attorney is the alleged victim in the charged offense, or has a personal interest in the prosecution. We consider federal and state cases in other jurisdictions, not because of an interest in comparing the law of those jurisdictions, but because the guarantee of due process of law under the Constitution of the United States applies throughout the country. Although from other jurisdictions, court opinions addressing similar circumstances may identify uniform principles to be considered in addressing the due process guarantee.

In *People v. Zimmer*, 51 N.Y.2d 390, 434 N.Y.S.2d 206, 414 N.E.2d 705

10

(1980), the district attorney was also the corporate counsel and a stockholder of the corporation alleged to be the victim of the crimes. The court noted the broad discretion a prosecutor has "to investigate, initiate, prosecute and discontinue[,]" and observed "that, overall, more control over individuals' liberty and reputation may thus be vested than in perhaps any other public official[.]" *Id.* at 208.

> Even our thumbnail description of prosecutorial power is enough to indicate that resulting prejudice can at least as easily flow from an act of omission as from one of commission, from discretion withheld as from discretion exercised. In this context, whether abuse is express or implied may be difficult to determine. . . .
> Thus, the practical impossibility of establishing that the conflict has worked to defendant's disadvantage dictates the adoption of standards under which a reasonable potential for prejudice will suffice[.]
> . . .
> Assuming he intended to be as fair and objective as fair could be, in presenting this evidence where did his role as partisan corporate attorney end and where did that of nonpartisan District Attorney begin? At what point was he serving which of his two masters? To put the questions is to state the problem, a problem instinct with due process implications.

*Id*. at 208-09. In dismissing the indictment, the court emphasized that the responsibilities carried out in the name of the state must be conducted in a manner that "fostered rather than discouraged public confidence in our government" and in the rule of law. *Id.* at 208; *see also People v. Adams*, 20 N.Y.3d 608, 613, 964 N.Y.S.2d 495, 987 N.E.2d 272 (2013).

The Kentucky court in *May v. Commonwealth* considered the issue in an

11

appeal from a conviction of a justice of the peace for assault and battery on a prosecutor. 285 S.W.2d 160, 162 (Ky. 1955). The trial court had overruled the defendant's motion to remove the prosecutor. *Id.* The appellate court did not hold that the dual capacity was absolutely impermissible, but suggested that "looking at the whole proceeding objectively, we have a strong feeling that another attorney should have tried the action, in order to remove the self-interest factor and thereby reduce to a minimum the display of passion and prejudice that can scarcely be kept in abeyance where, as here, the same person was the victim of the offense and the prosecutor." *Id.* The appellate court reversed the conviction for improper argument by the prosecutor. *Id.* at 163-64. The decision arguably supports relator's position that a court should wait until specific identifiable prejudice develops. But the opinion also demonstrates some of the troubles inevitably presented when the alleged victim prosecutes the case.

In an appeal from a trade secrets prosecution in California, the court considered the due process concerns that arise where the victim of the alleged crime contributes financially to the costs of the district attorney's investigation. *See People v. Eubanks*, 927 P.2d 310, 312 (Cal. 1996). The court reasoned that financial assistance to the prosecutor's office may disqualify the prosecutor if the assistance is of a character and magnitude as to render it unlikely that the

12

defendant will receive fair treatment during all portions of the criminal proceedings. *Id.* California law disallows private prosecutions; all criminal prosecutions are conducted in the name of the People and by their authority. *Id.* The court explained that "a public prosecutor must be free of special interests that might compete with the obligation to seek justice in an impartial manner[.]" *Id.* at 314-315.

> The importance, to the public as well as to individuals suspected or accused of crimes, that these discretionary functions be exercised "with the highest degree of integrity and impartiality, and with the appearance thereof" (*People v. Superior Court (Greer), supra,* 19 Cal. 3d at p. 267) cannot easily be overstated. The public prosecutor "'is the representative not of any ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer.'" (*Id.* at p. 266, quoting *Berger v. United States* (1935) 295 U.S. 78, 88 [79 L. Ed. 1314, 1321, 55 S. Ct. 629].)

*Id.* at 315. The court emphasized that the prosecutor represents the interest of the state in his role as prosecutor, and the interest is not that a case be won, but that justice be done. *See id.*

In Kansas, a defendant accused of planning to detonate an explosive device at the courthouse moved to disqualify the district attorney's office on the ground that the office was a crime victim. *State v. Cope*, 30 Kan.App.2d 893, 50 P.3d 513,

515 (Kan. Ct. App. 2002). The court reasoned that a disqualifying conflict of interest affecting the defendant's due process rights occurs when the conflict is "so grave as to render it unlikely that the defendant will receive fair treatment during all portions of the criminal proceedings." *Id.* at 515-16. The court held, however, that the defendant's due process rights were not violated in that case because the defendant never directly threatened the district attorney's office. *Id.* at 516. Despite the distinction drawn by the court between the levels of threat to the prosecutor, the reasoning cautions that a prosecutor's status as a direct crime victim poses a due process problem.

In a domestic assault case, a federal habeas court found a due process violation occurred where the prosecuting attorney was also representing the victim in the parties' divorce. *See Ganger v. Peyton*, 379 F.2d 709, 713 (4th Cir. 1967). The court reasoned that "the conduct of this prosecuting attorney in attempting at once to serve two masters, the people of the Commonwealth and the wife of Ganger, violates the requirement of fundamental fairness assured by the Due Process Clause of the Fourteenth Amendment." *Id*. at 714; *see also generally Wright v. United States,* 732 F.2d 1048, 1056 (2nd Cir. 1984) (A prosecutor "is not disinterested if he has, or is under the influence of others who have, an axe to grind against the defendant[.]").

14

Although relying on "supervisory authority to avoid the necessity of reaching any constitutional issues[,]" the United States Supreme Court in *Young v. United States ex rel. Vuitton et Fils. S.A.,* 481 U.S. 787, 809 n.21, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987), showed the obstacle to fundamental fairness presented when a prosecutor has a private interest in the case.

> A prosecutor exercises considerable discretion in matters such as the determination of which persons should be targets of investigation, what methods of investigation should be used, what information will be sought as evidence, which persons should be charged with what offenses, which persons should be utilized as witnesses, whether to enter into plea bargains and the terms on which they will be established, and whether any individuals should be granted immunity.

*Id*. at 807. Injecting a personal interest into the enforcement process may bring irrelevant or impermissible factors into the exercise of that discretion. *Id.* at 808. The problem is structural. *Id.* at 807. "It is a fundamental premise of our society that the state wield its formidable criminal enforcement powers in a rigorously disinterested fashion, for liberty itself may be at stake in such matters." *Id.* at 810. And when the prosecutor has a personal interest in the case, the circumstance "diminishes faith in the fairness of the criminal justice system in general." *Id.* at 811.

CONCLUSION

The United States Supreme Court has held that, although prosecutors "are

15

necessarily permitted to be zealous in their enforcement of the law[,]" due process imposes limits. *See Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242, 248-50, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980) (administrative prosecution); *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). This Court presumes no misconduct in these cases. But that does not eliminate the structural conflict and the obstacle to due process. The constitutional guarantee of due process preserves the appearance and the reality of fundamental fairness. *See Marshall*, 446 U.S. at 242, 248-250. In rare instances, when a structural conflict is actual and obvious and the "potential for misconduct is deemed intolerable" so as to constitute a due process violation, no showing of a specific prejudice is necessary to require disqualification. *See Young*, 481 U.S. at 807 n.18; *see also Marshall*, 446 U.S. at 248-50; *Landers*, 256 S.W.3d at 304; *Ex parte Spain*, 589 S.W.2d 132, 134 (Tex. Crim. App. 1979).

The indisputable facts of these cases are that the district attorney, in whose office is solely vested the State's power to prosecute offenses of this level in Montgomery County, is the victim alleged in the charging instruments. *See* Tex. Gov't Code Ann. § 43.105(b) (West 2004). In signing the orders, the trial court implicitly recognized the discretionary powers of a prosecutor and the importance of the appearance of "fairness of the criminal justice system in general" identified

16

in *Young*. 481 U.S. at 807, 811. But more specifically, from the facts before the court in these cases when the orders were signed, the trial court could reasonably find that relator would not recognize the legal disqualification, that relator had a personal interest in the prosecution, that jeopardy would attach with relator acting in dual roles as the district attorney responsible for the prosecutions and as the alleged victim, and that relator would be a trial witness. The trial court could, on these findings, rationally conclude that relator's competing roles, as both district attorney and complainant, present an "intolerable" potential to compromise the fundamental fairness guaranteed defendants by the due process clause. *See Young*, 481 U.S. at 807 n.18 ("deemed intolerable"); *Marshall*, 446 U.S. at 248-50; *Ganger*, 379 F.2d at 713; U.S. Const. amend. XIV. In these circumstances, the trial court could reasonably conclude that the actual and obvious structural conflict amounted to a denial of due process and a legal disqualification. *See Young,* 481 U.S. at 807-08; *Landers*, 256 S.W.3d at 304.

Relator appoints the assistant district attorneys who carry out the duties of his office. *See* Tex. Gov't Code Ann. § 43.105(c) (West 2004). Following uniform case-law, the trial court could reasonably rule that because the District Attorney is disqualified, all Assistant District Attorneys in the district are also disqualified. *See Marbut v. State*, 76 S.W.3d 742, 748-49 (Tex. App.—Waco 2002, pet. ref'd);

17

*Scarborough v. State*, 54 S.W.3d 419, 424 (Tex. App.—Waco 2001, no pet.); *State v. May*, 270 S.W.2d 682, 684 (Tex. Civ. App.—San Antonio 1954, no writ). *See also generally*, *Edwards*, 793 S.W.2d 1, 5-6 n.5 ("*May*, however, stands only for the proposition that *if* an elected district attorney has been lawfully disqualified from prosecution of certain causes, so have his assistants who serve at his will and pleasure."). A trial court may appoint a prosecutor pro tem if a district attorney is legally disqualified. Tex. Code Crim. Proc. Ann. art. 2.07.

To obtain a writ of mandamus from an appellate court requiring a trial court to withdraw an order, the relator must demonstrate not only that there is no adequate legal remedy, but also that there is a clear and indisputable right to the relief. *Greenwell v. Court of Appeals for Thirteenth Judicial Dist.*, 159 S.W.3d 645, 648 (Tex. Crim. App. 2005). We cannot say the trial court's disqualification decision "lies 'outside the zone of reasonable disagreement.'" *See Landers*, 256 S.W.3d at 303. On the mandamus record presented, relator has failed to show a clear and indisputable right to the relief sought. *See Patrick*, 86 S.W.3d at 594. The petition for writ of mandamus is therefore denied.

PETITION DENIED.

PER CURIAM

Submitted on June 20, 2013
Opinion Delivered August 14, 2013
Publish

Before McKeithen, C.J., Gaultney and Horton, JJ.