

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00265-CR

IN RE THE STATE OF TEXAS, RELATOR

Original Proceeding

December 20, 2018

## CONCURRING AND DISSENTING
## OPINION ON REHEARING

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

I heretofore joined both Chief Justice Quinn and Justice Parker in their decision to grant Relator's motion for rehearing and, to that extent, I join in their decision to withdraw our opinion of August 10, 2018.[1]  I do, however, respectfully dissent from the substitute opinions of my learned colleagues to the extent that they agree to grant mandamus relief based upon the conclusion that proof of actual prejudice was deficient.

Relator, Christopher Dennis, District Attorney for the 286th Judicial District of Hockley County, filed a petition for writs of mandamus and prohibition in this court.  *See*

---

[1] *See In re Tex.*, No. 07-18-00265-CV, 2018 Tex. App. LEXIS 6315 (Tex. App.—Amarillo Aug. 10, 2018, orig. proceeding).

TEX. GOV'T CODE ANN. § 22.221 (West Supp. 2018); TEX. R. APP. P. 52. By that petition, Dennis asked this court to issue a writ of mandamus ordering the Honorable Pat Phelan, presiding judge of the 286th District Court of Hockley County, to withdraw his July 2 and August 15 orders disqualifying the Hockley County District Attorney's Office from prosecuting thirteen cases,[2] and a writ of prohibition preventing the trial court from disqualifying that office in the future absent good cause shown. Because I would deny Dennis's petition seeking mandamus relief, as well as his petition for writ of prohibition, I respectfully dissent.

BACKGROUND

Dennis and the attorney for the real parties in interest, Christina Woods Duffy, engaged in an apparently contentious exchange relating to Duffy's motion to exclude expert witnesses in an unrelated case in which Dennis represented the State and Duffy represented the defendant. After the trial court ruled in favor of Duffy's client, thereby excluding Dennis's expert witnesses, on June 4, 2018, Dennis sent Duffy a text message withdrawing any existing plea offers on all pending cases for which she was the attorney

---

[2] In his original petition for writs of mandamus and prohibition, Dennis sought mandamus relief relating to the seven cases on which the trial court disqualified the District Attorney's Office by its July 2 order, and prohibition to prevent the trial court from disqualifying the District Attorney's Office from the six cases that remained pending. Soon after this court issued its denial of Dennis's petition, the trial court issued its August 15 order disqualifying the District Attorney's Office from those remaining six cases. By his motion for rehearing, Dennis prays that this court issue a writ of mandamus ordering the trial court to withdraw its July 2 and August 15 orders disqualifying the District Attorney's Office from prosecuting all thirteen cases, and a writ of prohibition preventing the trial court from disqualifying the District Attorney's Office in the future absent good cause shown. Because Dennis's petition addressed the possibility that the trial court would disqualify the District Attorney's Office in the six cases that were then pending and because Dennis's motion for rehearing requests mandamus relief as to orders in all thirteen cases, we will deem the petition to request mandamus relief as to all thirteen cases addressed in the petition in which Dennis and the District Attorney's Office have been disqualified.

of record.[3]  By letters of the same date, Dennis further notified Duffy that "[t]here will be no offer at this time" apparently as to each of her pending cases, regardless of whether there had been a prior plea bargain offer.

Duffy subsequently filed a motion to disqualify Dennis in those cases in which she was attorney of record.  As a basis for the requested disqualification, Duffy alleged the policy adopted by Dennis violated her client's federal and Texas constitutional rights of due process, effective assistance of counsel, and equal protection.  She further alleged that the policy amounted to prosecutorial vindictiveness as to any person represented by her.  By her prayer, Duffy sought dismissal of the prosecution or, in the alternative, the disqualification of the 286th District Attorney's Office.

Shortly after holding a hearing on Duffy's motion to disqualify, on July 2, 2018, Judge Phelan issued an order declaring the District Attorney's Office disqualified and appointing a special prosecutor in the original seven cases.  Judge Phelan did not rule on the remaining motions to disqualify.

In response to the seven original disqualification orders, Dennis filed his petition seeking the issuance of writs of mandamus and prohibition.  On August 10, this court issued our opinion denying Dennis's petition on the basis that he failed to meet his burden of showing that he was entitled to relief because he did not comply with the documentation requirements identified in Texas Rules of Appellate Procedure 52.3 and 52.7.  *See In re Tex.*, No. 07-18-00265-CV, 2018 Tex. App. LEXIS 6315 (Tex. App.—Amarillo Aug. 10, 2018, orig. proceeding).  On August 15, Judge Phelan heard argument in the remaining

---

[3] The text read, "[a]ny pending cases you have with offers outstanding . . . those offers are revoked, expired, and null.  Effective immediately."

3

six cases and, thereafter, granted those motions. On August 25, Dennis filed the instant motion for rehearing, which, when coupled with the original petition, complies with the procedural requirements applicable to his requests for mandamus and prohibition relief. At that time, we requested a response from Duffy, which she filed on September 6. We also requested oral arguments to flesh out the respective positions of the parties. Duffy appeared in person and presented her arguments. Dennis sent an assistant district attorney to present his position.

LEGAL STANDARDS AND ANALYSIS

In criminal cases, "mandamus relief is appropriate only when a relator establishes (1) that he has no adequate remedy at law to redress his alleged harm and (2) that what he seeks to compel is a ministerial act, not a discretionary or judicial decision." *In re Allen*, 462 S.W.3d 47, 49 (Tex. Crim. App. 2015).

The State's right to appeal is limited by statute and does not include the right to appeal a pretrial order disqualifying the elected district attorney. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01 (West 2018). As such, I agree with the opinions of my colleagues and with Dennis that the State's statutory right to appeal is an inadequate remedy, and therefore, it is appropriate for him to seek mandamus relief. *See In re State ex rel. Warren*, No. 02-17-00285-CV, 2017 Tex. App. LEXIS 8663, at *4-5 (Tex. App.—Fort Worth Sept. 12, 2017, orig. proceeding) (citing *Greenwell v. Court of Appeals for the Thirteenth Judicial Dist.*, 159 S.W.3d 645, 648-49 (Tex. Crim. App. 2005) (orig. proceeding)).

4

To meet his burden to establish entitlement to mandamus relief, Dennis was required to show that the trial court had a *ministerial duty* to deny Duffy's motions to disqualify. Stated another way, for the trial court to have a ministerial duty to deny the motion for disqualification of Dennis and the 286th District Attorney's Office, such a decision must have been the "one rational decision" that the trial court could have made "under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles." *In re Simon*, No. 03-16-00090-CV, 2016 Tex. App. LEXIS 6562, at *15 (Tex. App.—Austin June 22, 2016, orig. proceeding) (quoting *In re State ex rel. Weeks*, 391 S.W.3d 117, 122 (Tex. Crim. App. 2013) (orig. proceeding)). Contrary to my colleagues' opinions, I believe denial of the disqualification motions was not the "one rational decision" the trial court could have made. Because there are well-settled principles upon which a district attorney might be disqualified under certain circumstances, and because I believe the pending criminal cases at hand fall within the parameter of those circumstances, I conclude Judge Phelan was acting within his authority and the denial of Duffy's motion to disqualify was <u>not</u> the one rational option available to him. As such, Judge Phelan did not abuse his discretion in granting the motion to disqualify.

"A trial court has limited authority to disqualify an elected district attorney and [his] staff from the prosecution of a criminal case." *Buntion v. State*, 482 S.W.3d 58, 76 (Tex. Crim. App. 2016) (trial court's decision to deny motion to disqualify affirmed). "The office of a district attorney is constitutionally created and protected; thus, the district attorney's authority 'cannot be abridged or taken away'" lightly. *Id.* (quoting *Landers v. State*, 256 S.W.3d 295, 303-04 (Tex. Crim. App. 2008)). The district attorney "shall represent the

State in all criminal cases in the district courts of his district and in appeals therefrom, except in cases where he has been, before his election, employed adversely." TEX. CODE CRIM. PROC. ANN. art. 2.01 (West 2005). Even in light of this limited statutory basis for disqualification, it has been held that a trial court's authority to disqualify a district attorney in a particular case requires proof that the district attorney has a conflict of interest that rises to the level of a due process violation. *Landers*, 256 S.W.3d at 304; *State ex rel. Hill v. Pirtle*, 887 S.W.2d 921, 927 (Tex. Crim. App. 1994).

As Chief Justice Quinn and Justice Parker have emphasized in their respective opinions, in most instances, to establish a conflict of interest that rises to the level of a due process violation, the district attorney must be shown to have previously represented the defendant in the current case.[4] *In re Simon*, 2016 Tex. App. LEXIS 6562, at *17. *See Buntion*, 482 S.W.3d at 77. However, some instances have also been identified where a district attorney could be deemed to have a conflict of interest rising to the level of a due process violation due to a substantial connection to a case that did not arise from prior representation. *See In re Ligon*, 408 S.W.3d 888, 896 (Tex. App.—Beaumont 2013, orig. proceeding) (citing potential conflicts of interest arising from having a financial interest in the prosecution, being a material fact witness, or being the alleged victim of the charged crime). There is, however, no bright line rule for determining whether a conflict arises to the level of a due process violation and each case must be analyzed on its own set of

---

[4] We do note that district attorneys are statutorily disqualified from representation that is adverse to the State and where the district attorney is the subject of a criminal investigation by a law enforcement agency that is based on credible evidence of criminal misconduct that is within the attorney's authority to prosecute. *See* TEX. CODE CRIM. PROC. ANN. art. 2.08 (West Supp. 2018).

6

facts. In ascertaining whether a conflict of interest rises to that level, the United States Supreme Court has said:

> due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." Rather, the phrase expresses the requirement of "fundamental fairness," a requirement whose meaning can be as opaque as its importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise [that] must discover what "fundamental fairness" consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake.

*Lassiter v. Dep't. of Social Services*, 452 U.S. 18, 24-25, 101 S. Ct. 2153, 68 L. Ed. 2d 40 (1981) (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S. Ct. 1743, 6 L. Ed. 2d 1230 (1961)).

It is the "primary duty" of a prosecutor "not to convict, but to see that justice is done." TEX. CODE CRIM. PROC. ANN. art. 2.01 (West 2005). In that regard, a personal interest that is inconsistent with that duty to see that justice is done is a conflict that could potentially violate a defendant's fundamental due process rights. In the context of the criminal cases impacted by Dennis's mandate, it is not the deprivation of a plea bargain that is of constitutional dimension—for a defendant has no constitutional right to a plea bargain. Instead, it is the systematic and intentional discrimination against a particular attorney that effectively deprives an accused person represented by that particular attorney of his constitutional right to the effective assistance of counsel.

In the cases at issue, it is clear that Dennis has a "conflict of interest"—and it is personal. Dennis has unequivocally established that he has a personal vendetta against Duffy and his dislike of her is going to be taken out against her clients. Because Duffy stands *in pari locus* to her client and because she is for all intents and purposes the stand-

7

in or representative of the defendant, vindictive acts directed at Duffy are acts directed at her clients. By striking at Duffy, Dennis was simultaneously striking at her clients and I find that conflict of interest rises to the level of a due process violation because it effectively denies each of Duffy's clients the right to effective assistance of counsel and due process of law. *See In re Ligon,* 408 S.W.3d at 892 (holding that a "due process violation occurs where the prosecutor's personal interest generates a structural conflict that presents a potential for misconduct deemed intolerable"). *See also In re Guerra,* 235 S.W.3d 392, 415 (Tex. App.—Corpus Christi 2007, orig. proceeding) (holding that a trial court has "inherent judicial power, which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, or in the preservation of its independence and integrity" in disqualifying a district attorney for a personal conflict of interest not arising from any prior representation). "The absence of an impartial and disinterested prosecutor has been held to violate a criminal defendant's due process right to a fundamentally fair trial." *Id.* at 429. Here, faced with such a blatant degree of prosecutorial vindictiveness, directly impacting the constitutional rights of the accused, Judge Phelan reached the conclusion that the potential for prosecutorial misconduct was "intolerable." *Id.* at 415. Justice Parker holds the trial court had but "one rational decision" and that decision was to allow Dennis to continue his vindictive ways. I passionately disagree. Chief Justice Quinn, while condemning Dennis's conduct, nevertheless concludes that the trial court erred in granting Duffy's motion to disqualify because she failed to meet her burden of showing that her clients were actually prejudiced by his actions. In response, I can only say that Duffy did establish an abridgement of her clients' constitutional due process rights and that is enough. Proof of harm—proof of how that abridgement actually affected

8

the ultimate outcome of any individual case is something akin to the thought experiment known as "Schrodinger's cat," where the result of an experiment cannot be known until the experiment itself has been conducted—an unfortunate result that might be too late if one is the object of that experiment.

As such, I would conclude that (1) a conflict of interest exists between Dennis and the defendants seeking his disqualification, (2) which conflict rises to the level of a due process violation, and that (3) it is the very existence of that conflict which prejudices those defendants. Consequently, I would find that Judge Phelan's order of disqualification does not violate well-settled legal principles, and Dennis has not shown a clear right to mandamus relief. Accordingly, the relief requested should be denied.


Patrick A. Pirtle
Justice


Publish.