

KEN PAXTON

ATTORNEY GENERAL OF TEXAS

September 15, 2025

The Honorable Eric Burnett
Board President
Nueces River Authority
539 South Hwy 83
Uvalde, Texas 78801

**Opinion No. KP-0500**

Re: Interpretation of the recusal standard under Texas Government Code § 572.058(a) (RQ-0575-KP)

Dear Mr. Burnett:

You ask whether a Nueces River Authority board member should recuse themselves from "[b]oard discussions and votes involving the City of Corpus Christi . . . or the Port of Corpus Christi" as a result of the board member's "close familial relationship" with a senior-level employee of the City whose position carries "a special interest in water development projects."[1] Specifically, you state that the board member's "brother-in-law is an executive of Corpus Christi Water, the arm of the City responsible for water supply and service." Request Letter at 2. You express concern over this relationship because the Authority seeks to "construct and operate a state-of-the-art seawater desalination plant in the Corpus Christi area" that will "generate a new water supply and ensure present and future water security for the region." *Id.* at 1. According to your request letter, the Port and the City are "two entities in Corpus Christi . . . with whom [the Authority] could engage" to effectuate this project. *Id.* In fact, the Authority is already doing so: You explain the Authority "is in active negotiations with the Port to reach a formal agreement whereby the Port would lease property and license the necessary regulatory permits" for the project. *Id.* Further, you state that the City and the Port have "common and sometimes competing interests." *Id.* at 2. Despite these potential conflicting interests, the board member took part in the

---

[1] Letter and Attachments from Hon. Eric Burnett, Nueces River Auth. Bd. President, to Hon. Ken Paxton, Tex. Att'y Gen. at 1–2 (Jan. 17, 2025), https://www.texasattorneygeneral.gov/sites/default/files/request-files/request/2025/RQ0575KP.pdf ("Request Letter" and "Attachments," respectively).

Authority's discussions and votes involving negotiations with the Port.[2] *Id.* As such, you seek guidance on whether Government Code subsection 572.058(a) mandates recusal. *Id.* at 1−3.

**Chapter 572 of the Government Code generally and section 572.058 specifically govern state officer conflicts of interest.**

Chapter 572 of the Government Code contains mandatory standards of conduct for state officers and employees. *See* TEX. GOV'T CODE §§ 572.001−.069. These statutes aim "to strengthen the faith and confidence . . . in state government," *id.* § 572.001(b), and "serve not only as a guide for official conduct of those persons but also as a basis for discipline of those who refuse to abide by [their] terms," *id.* § 572.001(c). Indeed, the Legislature's stated policy explains "that a state officer or state employee may not have a direct or indirect interest, including financial and other interests, . . . that is in substantial conflict with the proper discharge of the officer's or employee's duties in the public interest." *Id.* § 572.001(a). To that end, the provision you reference requires public, memorialized disclosure by "[a]n elected or appointed officer[] . . . who is a member of a board or commission having policy direction over a state agency" if that individual "has a personal or private interest in a measure, proposal, or decision pending before the board or commission." *Id.* § 572.058(a). The officer with the personal or private interest may not "vote or otherwise participate in the decision." *Id.* And "[a]n individual who violates this section is subject to removal from office." *Id.* § 572.058(b). Your inquiry therefore requires us to address (1) whether the board member you reference is subject to this provision, and (2) if so, whether that individual has a "personal or private interest" that requires recusal from the vote and decision process. *See id.* § 572.058(a). We address each question in turn.

**Section 572.058 applies to the Authority's board members.**

We review the text as written, and begin with subsection 572.058(a)'s application to the board member in question. *See Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 720 (Tex. 2024) ("When the statutory language is unambiguous, we must apply the statute as written." (citation omitted)). As seen from the text, subsection 572.058(a) applies to an "elected or appointed officer, . . . who is a member of a board or commission having policy direction over a state agency." TEX. GOV'T CODE § 572.058(a).

Board members are not elected so we start with the meaning of "appointed officer." *See* TEX. SPEC. DIST. CODE § 8511.0201(a) (providing that the board is "appointed by the governor with the advice and consent of the senate"). An "appointed officer" includes "an officer of a state agency who is appointed for a term of office specified by the Texas Constitution or a statute of this state, excluding an appointee to a vacated elective office." TEX. GOV'T CODE § 572.002(1)(C). The board members are appointed for "staggered terms of six years." TEX. SPEC. DIST.

---

[2] You relay that information from the August 29, 2024 closed executive session was "unlawfully shared" resulting in "more than one local news entity report[ing] on information concerning the desalination plant project and negotiations with the Port." Request Letter at 2. *See generally* TEX. GOV'T CODE §§ 552.101, .131, .352. However, the questions of who shared this information and whether that action was unlawful go beyond the scope of your inquiry and involve questions of fact beyond the scope of this opinion. *See* Request Letter at 1; Tex. Att'y Gen. Op. No. KP-0240 (2019) at 1 (stating that "[t]he attorney general opinion process does not resolve disputed fact questions"). We therefore offer no comment on either issue.

CODE § 8511.0202. Moreover, chapter 572 defines "appointed officer of a major state agency" as "a member of[] . . . the board of directors of a river authority created under the Texas Constitution or a statute of this state." TEX. GOV'T CODE § 572.003(a), (c)(34); *see also id.* § 572.002(12) (defining "state officer" as "an appointed officer of a major state agency"). The Authority is "a conservation and reclamation district under Section 59, Article XVI, Texas Constitution," TEX. SPEC. DIST. CODE § 8511.0102(a)(1), and was created under Special District Local Laws chapter 8511, *id.* §§ 8511.0101−.0710. Thus, the Authority's board members are "appointed officers" under subsection 572.058(a).

Next, we consider whether the Authority's board has "policy direction over a state agency." TEX. GOV'T CODE § 572.058(a). As already discussed, the Authority qualifies as a "major state agency." *Id.* § 572.003(a), (c)(34). "Policy direction," however, is not defined so we look to the common and ordinary meaning. *See Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 34 (Tex. 2017) (relying on dictionary definitions to determine the "common, ordinary meaning" where a statutory term is not defined). "Policy" means "a definite course or method of action selected from among alternatives and in light of given conditions to guide and determine present and future decisions" and "a high-level overall plan embracing the general goals and acceptable procedures esp[ecially] of a governmental body." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 901 (10th ed. 1993). "Direction" means "guidance or supervision of an action or conduct . . . management." *Id.* at 328. Thus, the board member must have authority to guide, supervise, or manage the high-level plans of the Authority, including discretion to choose a course or method of action to guide and determine present and future Authority decisions.

The Authority's board may "make and determine plans necessary to accomplish the purposes for which the authority is created" as well as "perform all actions useful and helpful in carrying out [those] plans . . . and accomplishing the authority's purposes." TEX. SPEC. DIST. CODE § 8511.0325. The board also has authority to, *inter alia*, "adopt and implement a program of water conservation," *id.* § 8511.0305; award contracts, *id.* § 8511.0321; "provide for any expenditures it considers essential or useful in the authority's maintenance, operation, and administration," *id.* § 8511.0301(c); and "adopt necessary bylaws for the conduct of the authority's business," *id.* § 8511.0205. The board therefore has policy direction over the Authority. *See also id.* § 8511.0213 (recognizing that the board has "policymaking responsibilities").

**A personal or private interest can exist where a public official may be influenced by a familial relationship.**

We next consider what constitutes a personal or private interest. A board member cannot "vote or otherwise participate" in a decision involving "a measure, proposal, or decision pending before the board" for which they have "a personal or private interest." TEX. GOV'T CODE § 572.058(a). The Government Code explains that the term "personal or private interest" carries "the same meaning as is given to it under Article III, Section 22, of the Texas Constitution,

governing the conduct of members of the legislature."[3] *Id.* § 572.058(f); *see also* TEX. CONST. art. III, § 22 ("A member who has a personal or private interest in any measure or bill, proposed, or pending before the Legislature, shall disclose the fact to the House, of which he is a member, and shall not vote thereon."). When interpreting the Texas Constitution, "we rely heavily on its literal text and must give effect to its plain language." *Stringer v. Cendant Mortg. Corp.*, 23 S.W.3d 353, 355 (Tex. 2000)*.* We also "strive to give constitutional provisions the effect their makers and adopters intended." *Id.*

Section 22 does not define "personal or private interest," and courts have not construed this provision. *See* Tex. Att'y Gen. Op. No. GA-0351 (2005) at 4. Section 22's interpretative commentary nonetheless provides insight, clarifying that conflict of interests were "regulated by the House of Commons by a rule which forbids a member to vote on a matter in which he has a direct pecuniary interest, immediate and personal, and not merely of a general or remote description." TEX. CONST. art. III, § 22 interp. commentary (West 2007). The commentary also discusses the Jeffersonian principles behind conflict-of-interest rules—namely that "private interests" strictly compelled recusal not only by "the laws of decency" but also by virtue of "the social compact, which denies to any man to be a judge in his own cause."[4] *Id.* (citing II, THE WRITINGS OF THOMAS JEFFERSON 368 (Library ed. 1903)); *accord* THE FEDERALIST NO. 10 (James Madison) (G. Wills ed., 1982) ("No man is allowed to be a judge in his own cause, because his interest would certainly bias his judgment, and, not improbably, corrupt his integrity.").

Prior guidance from this office also proves instructive. One opinion concerned a member of the Board of Public Accountancy whose sister was "an officer in a trade association in the profession of public accountancy." Tex. Att'y Gen. LO-88-103 (1988) at 1.[5] The opinion in part considered whether the member had "a personal or private interest" in board activities "assuming that her sister was an officer of the trade association at that time" the member was on the board. *Id.* at 1−2 (reviewing prior version of section 572.058). Relying on the mere "*possibility* for a conflict of interest" as well as "the *appearance* of a conflict" in board activities affecting the "board member's sister or the organization in which the sister is an officer," the opinion concluded it was "imperative for the Board to review all of the matters" where the board member cast a vote. *Id.* at 2 (emphases added). The opinion explained that this action was further supported by Texas's public policy "requir[ing] that . . . an official" refrain from voting "in a matter concerning an issue in which the official has a direct, personal interest." *Id.* Should "such an examination reveal[] that the . . . member cast a deciding vote" in a matter affecting the board member's sister or the sister's organization, then the board's action was, "at the least, . . . voidable." *Id.*

---

[3] Subsection (f) also states that an individual does not have a "personal or private interest . . . if the individual is engaged in a profession, trade, or occupation and the individual's interest is the same as all others similarly engaged in the profession, trade, or occupation." TEX. GOV'T CODE § 572.058(f). You do not ask about this provision so we do not address it here.

[4] *See generally* THOMAS JEFFERSON, A MANUAL OF PARLIAMENTARY PRACTICE: FOR THE USE OF THE SENATE OF THE UNITED STATES § XVII (Wilbur Samuel Howell, 2d ed. 1812) (officially titled "Order in Debate"), https://constitution.org/1-History/Founders/tj/tj-mpp.htm.

[5] A previous opinion concluded the board member was ineligible to serve on the board under the nepotism statute in effect at the time of the opinion. *See* Tex. Att'y Gen. LO–88–68 (1988) at 4.

Another opinion considered conflicts of interests where a county commissioners court member and county auditor were married. Tex. Att'y Gen. LO-93-8 (1993) at 1.[6] The county auditor kept "accounts for county officers" and had "general oversight" over the county officers' financial records. *Id.* In turn, the commissioners court "examine[d] county financial records" and "corrected errors therein." *Id.* Different entities appointed those officers: the Legislature and the county's district judge. *Id.* The auditor was subject to removal by the district judge, even though the auditor "d[id] not work under the direction of the district judge," to "maintain the auditor's independence from the commissioners court." *Id.* Despite the independent nature of each office, however, the opinion found "the emotional bond between husband and wife" significant in the consideration of conflicts of interests even where there was no "financial aspects that would amount to a question of self-dealing." *Id.* at 6. Such a bond "could make it impossible" for the parties to "exercise appropriate independence of judgment" required by their official functions. *Id.* And the opinion concluded there were "serious ethical ramifications" because the "appearance of a conflict of interest" alone can "undermine the public's confidence in its elected and appointed officials." *Id.*; *see also* Tex. Att'y Gen. Op. No. KP-0045 (2015) at 3 (concluding that a public official should abstain from voting where a matter might concern the public official's wife).

For comparison, another opinion addressed a conflict-of-interest question where Texas Southern University's Board of Regents awarded two contracts to a project management services company whose president was the board chairman's brother-in-law. Tex. Att'y Gen. LO-88-44 (1988) at 1. There, the chairman disclosed that his brother-in-law was the president of the corporation and "abstained from voting on each of the contracts." *Id.* at 2. The opinion therefore concluded under the facts described that "no action of either the board or its chairman violated" the predecessor to section 572.058. *Id.*

**A personal or private interest exists where a board member engages in board activities that may be influenced by a familial relationship.**

Taking the above examples together, it is evident that a personal or private interest can originate from a familial relationship that has the potential to influence the public official in the exercise of their duties and responsibilities. With this principle in mind, we now turn to the facts at hand.[7]

The Authority exists in part to address "the conservation and development of the natural resources inside the Nueces River Basin." Request Letter at 1; *see also* TEX. SPEC. DIST. CODE § 8511.0102(b) ("The authority's creation is essential to accomplish the purposes of Section 59, Article XVI, Texas Constitution."). *See generally* TEX. SPEC. DIST. CODE §§ 8511.0101−.0710. To this end, the Authority is participating in negotiations with the Port to "construct and operate a state-of-the-art seawater desalination plant in the Corpus Christi area." Request Letter at 1. This plant will effectuate the Authority's purpose—"generat[ing] a new water supply and ensur[ing]

---

[6] This opinion considered the application of Local Government Code chapter 171. Tex. Att'y Gen. LO-93-8 (1993) at 6. Although concluding that chapter did not apply, the opinion acknowledged the "emotional bond of loyalty inherent in the marital relationship itself." *Id.*

[7] *See* Tex. Att'y Gen. Op. No. KP-0143 (2017) at 2 ("[W]hen responding to opinion requests, we provide advice concerning the legal issues presented and assume the facts as presented to us are true.").

present and future water security for the region." *Id.* The board member in question has a brother-in-law who is an executive at Corpus Christi Water, a City entity, and similar to the Authority, the entity is "responsible for [the City's] water supply and service." *Id.* at 2. Also like the Authority, Corpus Christi Water has "a special interest in water development projects" in the Corpus Christi area. *Id.*

It is consequential that Corpus Christi Water and the Authority seek water development projects in the Corpus Christi area to improve water supply and security. *Id.* This family member's employer-based "special interest in water development projects" is only magnified by your coordinate representation that the Port, with whom the Authority is negotiating, and the City have "common and sometimes competing interests." *Id.* Familial relationships combined with competing interests can create conflicting loyalties, influencing one's judgment. *See supra* pp. 4−5. Given that the longstanding "public policy of this state [is] to construe the prohibition against a conflict of interest broadly enough both to include the indirect use of official influence to further one's private . . . interest and to include the mere possibility that such influence might be used," Tex. Att'y Gen. Op. No. JM-296 (1985) at 6, we conclude that the board member you reference possesses a personal or private interest under subsection 572.058(a).

Moreover, although not required under subsection 572.058(a), the appearance of impropriety independently counsels in favor of recusal. Our "[g]overnment [is] founded in opinion and confidence." THOMAS JEFFERSON, THE COMPLETE ANAS OF THOMAS JEFFERSON 90 (Franklin B. Sawvel, 1st ed. 1903). A board member occupies a position of public trust with official responsibilities whereby the officer takes an oath to "faithfully execute the duties of the office." TEX. CONST. art. XVI, § 1(a). "[P]ublic confidence in . . . elected . . . officials . . . is enhanced by the public's knowledge that these . . . officials are not engaged in conflicts of interest." Tex. Att'y Gen. OR2016-11121 (2016) at 2. Of no small significance, "even the appearance of a conflict of interest can undermine the public's confidence in its elected and appointed officials." Tex. Att'y Gen. LO-93-8 (1993) at 6. *See generally* TEX. GOV'T CODE § 572.001(b); *In re Ligon*, 408 S.W.3d 888, 893 (Tex. App.—Beaumont 2013, orig. proceeding) (per curiam) ("[T]he responsibilities carried out in the name of the state must be conducted in a manner that 'foster[] rather than discourage[] public confidence in our government' . . . ." (quoting *People v. Zimmer*, 414 N.E.2d 705, 708 (N.Y. 1980))).

Relying on the facts as presented, we conclude the board member has a personal or private interest and, as required under subsection 572.058(a), should publicly disclose the conflict of interest to the board and abstain from voting on or otherwise participating in decisions concerning the plans and negotiations you raise.

## S U M M A R Y

Under Government Code section 572.058, an elected or appointed official must recuse themselves from a vote or decision in which they have a personal or private interest originating from a familial relationship that has the potential to influence the public official in the exercise of their duties and responsibilities. Thus, a Nueces River Authority board member whose brother-in-law is an executive staff member of the water supply entity for the City of Corpus Christi should recuse themselves from a vote and otherwise refrain from participating in a decision about Authority business regarding water supply activities that have common or competing interests with the City of Corpus Christi.

Very truly yours,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

JOSHUA C. FIVESON
Chair, Opinion Committee

AMY L. K. WILLS
Assistant Attorney General, Opinion Committee